**AMERICAN PETROFINA, INC., American Petrofina Company of Texas, and American Petrofina Marketing, Inc., Appellants,**

v.

**PPG INDUSTRIES, INC., and Ayres Oil Co., Inc., Appellees.**

**Nos. 2–83–133–CV, 2–83–152–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 1, 1984.

Maxwell, Godwin & Carlton and Donald E. Godwin, Dallas, for appellants.

Banner, McIntosh & Dobbs and Jack Benner, Wichita Falls, for appellee PPG Industries, Inc.

Fillmore & Associates and H. Dustin Fillmore, Fort Worth, for appellee Ayres Oil Co., Inc.

Before FENDER, C.J., and HUGHES and JOE SPURLOCK, II, JJ.·

## OPINION

FENDER, Chief Justice.

In this case PPG Industries, Inc. (PPG) brought suit jointly and severally against American Petrofina, Inc., American Petrofina Company of Texas, and American Petrofina Marketing, Inc. (Fina) and Ayres Oil Co. Inc. and Jack Ayres, individually (Ayres), whereupon Ayres sued Fina. After consolidation of the two suits Ayres cross-claimed against Fina, asserting essentially the same causes of action as asserted against Fina in its original petition.

In alternative counts, PPG pled (1) conversion, (2) violations of the Deceptive Trade Practices Act, (3) breach of contract, (4) Fraud, (5) breach of bailment, and (6) unjust enrichment. Ayres asserted its cross-claim against Fina for (1) indemnification for breach of contract, (2) violations of the Deceptive Trade Practices Act and indemnification for violations of the Deceptive Trade Practices Act asserted against it by PPG, (3) tortious interference with contract (4) conversion, and (5) indemnification for PPG's cause of action alleging conversion. Fina asserted as affirmative defenses, (1) abandonment of contractual rights by PPG and Ayres, (2) the doctrine of laches and stale demands, and (3) the agreement between Ayres and itself was unconscionable on the part of Ayres.

After the jury trial the suits were severed and separate judgments were entered. PPG's judgment against Fina and Ayres jointly and severally was for $3,240,000 in actual damages and prejudgment interest in the amount of $308,375.40; against Fina only for $6,480,000 in trebled damages and $150,900 attorneys fees. Ayres' judgment against Fina was for full indemnity for all amounts required to be paid by it in PPG's judgment, $126,471.00 in actual damages and $12,000,000 exemplary damages. Upon Fina's appeal from both judgments, the causes were again consolidated and are together before us.

The case arises out of a dispute among the parties regarding their respective rights and obligations under two contracts. The first contract was executed by PPG and Ayres. The second was executed by Ayres and Fina. These contracts will be referred to as "PPG-Ayres" and "Ayres-

Fina" respectively. The background against which the contracts should be viewed is as follows.

PPG produces glass at its Wichita Falls plant in furnaces which utilize natural gas as the primary source of fuel. Those furnaces are equipped to use diesel oil in emergencies and they consume 50,000 gallons per day of such use. The Fina companies are producers of diesel oil and other related products and they maintain one of their pipeline terminals and storage facilities at Wichita Falls. Ayres is a "jobber" which sells Fina's petroleum products in the Wichita Falls area.

During the extremely cold winter, in February, 1977, PPG perceived danger to its continuing supply of natural gas fuel because it was experiencing curtailments of such fuel. To meet such danger, PPG took steps to provide itself with a sufficient quantity of diesel oil to enable it to continue operating with the alternate fuel in the event its use became necessary. PPG contacted Ayres, which in turn contacted Fina regarding the possibility of the purchase of large quantities of diesel oil. The results of negotiations thereafter were the two contracts which form the basis of the litigation.

The PPG-Ayres contract was executed on August 28, 1977, and is entitled *Diesel Fuel Supply And Storage Agreement*. It describes PPG as "buyer" and Ayres as "seller" and is for an initial term of five years. It provides that on the effective date (August 1) Ayres shall "sell to and store" for PPG's account 3,000,000 gallons of diesel fuel oil at $0.36 per gallon and that PPG pay a storage charge of $2,000 per month "for the entire term hereof for the three million gallons of storage space provided." Provision is made for replenishment of the oil used by PPG at the "branded jobber price" then prevailing. The maximum daily delivery rate was set at 60,000 gallons.

On September 1, 1977, Ayres and Fina consummated their "Fuel Purchase Agreement." It provided for the sale of an "initial quantity" of 3,000,000 gallons of diesel

fuel to Ayres at $0.35 per gallon with payment in full for the initial quantity upon execution of the agreement. The oil was to be "made available" to Ayres at a rate not in excess of 60,000 gallons per day. Fina further agreed to sell and Ayres agreed to buy "additional quantities" of oil at the then prevailing branded jobber price in accordance with a schedule designed generally to maintain a three million gallon inventory by each November first during the five year term. The concluding paragraph of the agreement states:

"6. After termination of this agreement, any product which has been purchased by Buyer hereunder shall be delivered by Seller·to Buyer in the manner and at the rate set forth herein."

PPG paid Ayres $1,080,000 and Ayres paid Fina $1,039,500, representing a purchase price of 35 cents per gallon, less one percent cash discount.

Subsequent to the execution of the contracts, the eventuality against which PPG sought to protect itself failed to materialize. A series of mild winters and increased natural gas supply combined to avert curtailment of the natural gas at PPG's plant, and accordingly PPG found no need for the stand-by fuel it purchased from Ayres nor did Ayres have reason to call for delivery of the diesel oil it had purchased from Fina. The contracts lay dormant until August of 1981, except for the routine monthly report of Ayres in verification of PPG's inventory and an occasional sampling and quality testing of its inventory by PPG. At that time, PPG decided to reduce its inventory by 1,400,000 gallons and to sell off that amount for the best price available, and so informed Ayres. Being assured by Ayres that the oil would be available, PPG made arrangements to sell 1,400,000 gallons to Pride Oil Co. for $0.92 per gallon. Fina's initial reaction to this plan was to begin to make bookkeeping arrangements for delivery as requested by Ayres. Soon thereafter, Fina took the position that the 1977 agreements were not enforceable due to the four-year inactivity and refused deliv-

ery but offered to return the purchase price plus interest. Fina's offer was refused and litigation ensued. Fina brings forty-one points of error in its appeal from the two judgments. For purposes of clarity, the points of error will be discussed as they relate to the two judgments entered below.

## I. JUDGMENT IN FAVOR OF PPG

The judgment entered against Fina and in favor of PPG was on PPG's deceptive trade practices cause of action. Fina raises ten points of error regarding the question of whether the trial court erred in finding that PPG had a cause of action under the DTPA. Fina avers in its eighth point of error that PPG is not a consumer and that if PPG does qualify as a consumer, it did not comply with the notice requirements of the DTPA.

■ Two requirements must be satisfied for a person or corporation to qualify as a consumer under the DTPA. The person or corporation must have sought or acquired goods or services by purchase or lease and the goods or services purchased or leased must form the basis of the complaint. Privity is not a consideration in deciding consumer status. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 541 (Tex. 1981).

■ The trial court found that PPG was the owner of the three million gallons of diesel fuel oil at all times after Fina accepted payment therefor on September 21, 1977. Fina's reasoning under its non-consumer argument is that due to this finding by the court, the goods did not form the basis of the complaint when Fina refused delivery of the fuel in 1981. We disagree. Fina overlooks the allegations of misrepresentations at the inception of the purchase in 1977. Under the test set forth by the Supreme Court, PPG does qualify as a consumer. It sought three million gallons of diesel fuel by purchase and those goods form the basis of its complaint. *See Cameron v. Terrell & Garrett, Inc., supra,* at 541.

■ Fina's alternate contention is that if PPG does qualify as a consumer, it did not comply with the notice requirements of the DTPA. Fina states in its brief that PPG's notice to Fina that it intended to file a DTPA action was received on June 16, 1982. PPG's original petition was filed June 15, 1982. The 1979 amendments to the DTPA made 30 days written notice a prerequisite to the filing of suit. 1979 TEX.GEN.LAWS, ch. 603, sec. 17.50A at 1330. Fina argues that since PPG failed to comply with this prerequisite, it should be precluded from recovering treble damages. *See Blumenthal v. Ameritex Computer Corp.,* 646 S.W.2d 283 (Tex.App.—Dallas 1983, no writ). Before deciding whether the notice was proper, we must decide which amendments to the DTPA govern this suit.

The 1979 amendatory act contains a provision which states:

This Act shall be applied prospectively only. Nothing in this Act affects either procedurally or substantively a cause of action that arose either in whole or in part prior to the effective date of this Act.

1979 TEX.GEN.LAWS, ch. 603, sec. 17.-56A, sec. 9 at 1332. The trial court found that PPG's cause of action arose at least in part before the 1979 amendments became effective. We agree. The negotiations for the purchase of this three million gallons of fuel took place in 1977 and PPG claims misrepresentations of Fina during such preliminaries. Although the dispute over who had rights to the fuel did not come about until 1981, there would have been no dispute if the events of 1977 had not transpired. The court was correct in its holding that the 1977 amendments to the DPTA were applicable to the case at hand.

■ Under the 1977 amendments, the notice provisions of the DTPA provided:

In an action brought under Section 17.50 of this subchapter, actual damages only and attorney's fees reasonable in relation to the amount of work expended and court costs may be awarded where the defendant . . .

(2) proves that he had no written notice of the consumer's complaint before suit was filed. . . .

1977 TEX.GEN.LAWS, ch. 216, sec. 17.50A at 604. This provision would permit Fina to limit its liability to actual damages and attorney's fees if it proved it had no written notice of PPG's complaint before the suit was filed. *See Chrysler-Plymouth City, Inc. v. Guerrero,* 620 S.W.2d 700, 706 (Tex.Civ.App.—San Antonio 1981, no writ); and *Jim Walter Homes, Inc. v. Geffert,* 614 S.W.2d 843 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). However, since the non-receipt of notice was an affirmative defense under the 1977 amendments, it should have been pled under TEX. R.CIV.P. 94 and an issue submitted to the jury. *Ridco, Inc. v. Sexton,* 623 S.W.2d 792 (Tex.App.—Fort Worth 1981, no writ). Since this was not done, an award of treble damages was not barred by the failure to give notice. Fina's eighth point of error is overruled.

■ In points of error two through six, Fina asserts there is no evidence, or factually insufficient evidence to support the jury's finding under Special Issue No. 1(a-e). In that issue, the following list of violations under TEX.BUS. & COM.CODE ANN. secs. 17.50(a)(3) (Vernon 1977) were submitted to the jury that Fina:

a. Caused confusion or misunderstanding as to Fina's affiliation, connection or association with the transaction in question.

b. Caused confusion or misunderstanding as to Fina's affiliation, connection or association with Ayres.

c. Represented that the September 1, 1977 agreement conferred or involves rights, remedies or obligations which Fina later claimed it did not have.

d. Misrepresented the authority of Ayres to negotiate the final terms of the consumer transaction for Fina.

e. Warranted that upon payment for the fuel in question, title would pass and that the fuel would be delivered on demand.

In other special issues, the jury was asked to find whether Fina engaged in the conduct; whether such conduct was a deceptive trade practice; whether it was the producing cause of PPG's actual damage; and whether it was the producing cause of Ayres' actual damage. "Deceptive trade practice" was defined as "any false, misleading or deceptive act or practice in the conduct of any trade or commerce." "False, misleading or deceptive acts or practices" was defined as "an act or series of acts which has the capacity or tendency to deceive an average or ordinary person." The jury gave an affirmative answer to each of the questions asked. If there is sufficient evidence and law to support any one of these grounds of recovery, it is the duty of this court to affirm the judgment of the trial court.

■ In our review of appellant's "no evidence" point, it is fundamental that the jury's fact findings be upheld by us if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown S. & L. Assn,* 595 S.W.2d 486, 488 (Tex.1979). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Kindred v. Con/Chem, Inc.* 650 S.W.2d 61, 63 (Tex.1983). Moreover, in testing these findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings. *Stedman, supra;* Calvert, *"No Evidence"* and *"Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960).

■ On the other hand, when we confront a challenge that the evidence is insufficient, we must consider and weigh all the evidence in the case, including that which is contrary to the verdict. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). We must determine whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In other words, this Court must determine if the

evidence which supports the jury's answers to the special issues is so weak, or the evidence to the contrary is so overwhelming, as to warrant a setting aside of the verdict and remanding for a new trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *Calvert, supra.*

■ We first address the question of whether there was evidence to support the jury's answer to Special Issue 1(e): "[that Fina] warranted that upon payment for the fuel in question, title would pass and that the fuel would be delivered on demand." In our review of the record, we cannot find where any such express or implied warranty was made. Fina could not have breached a warranty of good title since there was no showing Fina did not have good title to the oil which it contracted to sell under the agreements. PPG argues that an express warranty of *delivery* was created by paragraph 6 of the Ayres-Fina agreement. That paragraph reads as follows:

6. After termination of this Agreement, any product which has been purchased by Buyer hereunder shall be delivered by Seller to Buyer in the manner and at the rate set forth herein.

The language in this paragraph is not sufficient to create an express warranty. PPG's second argument is that Fina violated an *implied* warranty of delivery, relying on TEX.BUS. & COM.CODE ANN. sec. 2.312(a) and sec. 2.301. In support thereof, PPG's brief quotes the law as follows:

"2.301 General Obligations of Parties
The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract.
2.312 Warranty of Title And Against Infringement; Buyer's Obligation Against Infringement
(a) [T]here is in a contract for sale a warranty by the seller that
(2) the goods shall be delivered ..."

This Court is not misled by the deliberate or inadvertent omission of the remainder of the language of Subsection (2). The complete text of that subsection is

"(2) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of the contracting has no knowledge."

Our Supreme Court has just recently considered the breach of warranty provision of the DTPA in *La Sara Grain Company v. First National Bank of Mercedes, Texas,* 27 Tex.Sup.Ct.J. 382 (May 26, 1984). There it is observed that the DTPA does not define the term "warranty" nor does it create warranties, and therefore any warranty must be established independently of the DTPA. It is also said in that case that implied warranties are derived primarily from statute, and the Court turned to the Uniform Commercial Code as a possible source of implied warranties. We, also, look to the Uniform Commercial Code and find that Sections 2.312 through 2.318, TEX.BUS. & COM.CODE ANN. (Vernon 1968), create warranties dealing with title, description, merchantability and fitness of goods. However, an obligation to deliver goods is not the subject of any statutory warranty we find in the Uniform Commercial Code or elsewhere. There being no breach of an express or implied warranty of delivery shown, we sustain appellant's sixth point of error as to no evidence to support the jury finding as to special issue 1(e).

■ We next turn to the question of whether there was any evidence and whether that evidence was sufficient to support the jury's findings to Special Issue No. 1(a) and (b), that Fina caused confusion or misunderstanding as to its affiliation, connection or association with the transaction in question and its affiliation, connection or association with Ayres. We find that there is no evidence to support the jury's finding since we find no confusion as to Fina's affiliation with this transaction or its affiliation with Ayres. It is the nature of Ayres' business that he cannot provide fuel to his customers unless he first gets the fuel from his supplier. Ayres is a jobber, not a manufacturer. Fina is precluded from selling directly to customers.

Ayres began negotiations for the purchase and sale of the diesel fuel in March 1977. The evidence showed that in June of that year, Gerald Barb, purchasing agent for PPG at Wichita Falls, had a conversation with Herman Canil, the liquid and solid fuel supplier for PPG. Barb told Canil that it looked like PPG would go through with the contract with Ayres Oil. Canil asked Barb at that time to touch base with Fina. Barb contacted Bill Franks, Fina's Wichita Falls district manager. Barb testified that Franks told him during that conversation that Fina was sorry it could not sell to PPG directly but it would back Ayres Oil in anything it was doing with PPG. Franks testified that he never met or talked with Barb. It is this statement that PPG is alleging gives rise to its cause of action for causing confusion or misunderstanding regarding Fina's connection with the transaction.

The evidence shows that Jack Ayres was the only person who negotiated the sale of diesel fuel to PPG. PPG admits it had no other contact with any Fina employee while the terms of the contract were being negotiated. Ralph Siebach, plant manager for PPG, stated at trial that he was aware of the fact that any fuel PPG bought from Ayres, Ayres had in turn bought from Fina. There was also evidence that PPG had bought fuel from Ayres on other occasions.

PPG was aware of the relationship between all the parties as admitted by its own representatives who negotiated the deal. There was no showing at the trial that the relationship between all the parties was anything different than what it was represented to be. PPG cannot now claim it was confused or misunderstood the connection between the parties. Fina's second and third points of error are sustained.

We now look at special issue 1(c) and Fina's claim that the jury's answer thereto is not supported by evidence. The special issue inquires if Fina represented "that the September 1, 1977 agreement conferred or involves rights, remedies or obligations which Fina later claimed it did

not have." The agreement referred to is the Ayres-Fina agreement. There is no evidence that Fina's representatives ever discussed that agreement with anybody but Jack Ayres, and hence could not have made any representations to PPG regarding the rights, remedies or obligations conferred by that agreement. PPG argues that since the jury found that Jack Ayres was the apparent agent for Fina, any representations made to PPG by Ayres concerning the Ayres-Fina contract can be considered representations made by Fina. The answer to such contention is that no issues were submitted regarding representations by Jack Ayres in such capacity, and the special issue 1(c) under consideration is not sufficient to include by inference a representation by Jack Ayres acting by apparent authority as agent for Fina. Fina's point of error four is sustained.

Turning to special issue 1(d), we now examine the finding that Fina "misrepresented the authority of Ayres to negotiate the final terms of the consumer transaction for Fina." On this point, PPG relies on the testimony of its purchasing agent, Jerry Barb, which testimony was touched upon earlier. While testifying further Barb was asked this leading question: "From the conversation you had with this executive at American Petrofina, did he represent to you that they were acting through Ayres in negotiating this sale with you?", to which he answered "Yes, sir. I came away with the idea definitely that they were backing Mr. Ayres, and I was so told." Bill Franks testified that he never met or talked to Mr. Barb.

Mr. Barb testified that Franks told him he was familiar with the Ayres proposal to Fina of March 22, 1977. He testified also that on July 7th, 1977, some thirty days after the telephone conversation with Franks, there was a meeting with Ayres to discuss seven changes which PPG required to be made in the Ayres March 22 proposal and that all seven changes were incorporated in the final agreement executed with Ayres on August 28th, 1977.

On cross examination Barb stated that he told Franks the fuel might have to be stored for as long as five years, but there was no discussion of the storage fee of $2,000 per month, that he had never seen anything in writing authorizing Ayres to act on behalf of Fina and didn't request anything in writing.

The net effect of Barb's testimony, as we view it, is that Fina's district manager, Bill Franks, told him that Fina would *back* Ayres in the light of the March proposal. That proposal was changed in seven particulars before the "final terms of the consumer transactions" were agreed upon in August with no hint of further communication from Fina. If the statements attributed to Franks are taken as true they fall short of being a representation of the Fina Corporations that Ayres had "authority to negotiate the final terms of the consumer transaction for Fina." Point of error number five is sustained.

There remains one final question as to Fina's liability under the DTPA and that is whether it is guilty of the unconscionable act found by the jury. A consumer has a cause of action when a person commits an unconscionable act that is a producing cause of actual damages. TEX. BUS. & COM.CODE ANN. sec. 17.50(a)(3) (Vernon Supp.1977). We must decide whether there is sufficient evidence to support the jury's finding to special issue number 2(a) that Fina's conduct in relation to this transaction was "unconscionable." The definition contained in Section 17.45(5), 1977 TEX.GEN.LAWS, ch. 216, at 600 is:

> "(5) 'Unconscionable action or course of action' means an act or practice, which to a person's detriment:
>
> "(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or
>
> "(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration."

Special issue number 2(a) is formulated under (B) above.

Fina advances the argument that because it had a good faith belief that Ayres Oil had abandoned the Ayres-Fina contract, its conduct cannot be considered unconscionable. This argument has been addressed by the Texas Supreme Court in *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980). The Court there held that proof of intent to deceive is not a requirement to recovery of treble damages unless the statute requires intent. The DTPA definition of unconscionable conduct contains no such requirement.

Fina also advances the argument that inasmuch as a transfer of consideration did not occur between Fina and PPG, Fina could not have engaged in unconscionable conduct towards PPG. This argument was addressed in *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705 (Tex.1983). PPG urges that the holding in *Flenniken* applies in this case since it rejected privity of parties as necessary to a DTPA action. It is true that our Supreme Court wrote that "a plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant." We note however, that the Court then was considering an unconscionable foreclosure of a deed of trust which had been acquired by the defendant bank by assignment. Under those circumstances it was held that the grantors of the deed of trust were consumers as to all parties who sought to enjoy the benefits of the original transaction. Whether such rule would be applicable to the point at hand is a question which we do not feel required to decide, because we will sustain Fina's point of error number ten upon other grounds.

We must sustain Fina's no evidence/insufficient evidence point number ten because we find there to be no gross disparity between value received and consideration paid. The trial court properly concluded as a matter of law that the two contracts should be construed together and treated as one contract, the rule being that separate contracts executed at the same

time, for the same purpose and in the course of the same transaction are to be considered as one instrument and this may be so even though they are not between the same parties. *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62, 65 (1959). *See also Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981).

The contracts when construed together, in the light of the acts of the parties, constitute a transaction in which the consideration flowed from PPG in the form of the full purchase price and PPG in turn received the bargained-for consideration in the form of title to and ownership of three million gallons of the diesel oil then contained in Fina's tanks. A "sale" consists in the passing of title from the seller to the buyer for a price. A "present sale" means a sale which is accomplished by the making of the contract. TEX.BUS. & COM.CODE ANN. Section 2.106(a) Sales (Tex.UCC) (Vernon 1968).[1] All section references hereafter are to this Code. There may be a sale of a part of existing identified goods. An agreed proportion of an identified bulk of fungible goods may be sold to the buyer who then becomes an owner in common. Section 2.105(c), (d).[2] In the absence of explicit agreement identification occurs when the contract is made if it is for the sale of goods already existing and identified. Section 2.501.[3]

Unless otherwise explicitly agreed where delivery is to be made without moving the goods, if the goods are already identified at the time of contracting and no documents of title are to be delivered, title passes at the time and place of contracting. Section 2.401(c).[4] There can be no doubt that the

1. Sec. 2.106. Definitions: "Contract"; "Agreement"; "Contract for Sale"; "Sale"; "Present Sale"; "Conforming" to Contract; "Termination"; "Cancellation"

(a) In this chapter unless the context otherwise requires contract and agreement are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2.401). A "present sale" means a sale which is accomplished by the making of the contract.

2. Sec. 2.105.

(c) There may be a sale of a part interest in existing identified goods.

(d) An undivided share in an identified bulk of fungible goods is sufficiently identified to be sold although the quantity of the bulk is not determined. Any agreed proportion of such a bulk or any quantity thereof agreed upon by number, weight or other measure may to the seller's interest in the bulk be sold to the buyer who then becomes an owner in common.

3. Sec. 2.501. Insurable Interest in Goods; Manner of Identification of Goods

(a) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(1) when the contract is made if it is for the sale of goods already existing and identified;

(2) if the contract is for the sale of future goods other than those described in Subdivision (3), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;

(3) when the crops are planted or otherwise become growing crops or the young are conceived if the contract is for the sale of unborn young to be born within twelve months after contracting or for the sale of crops to be harvested within twelve months or the next normal harvest season after contracting whichever is longer.

4. Sec. 2.401. Passing of Title; Reservation for Security; Limited Application of This Section

Each provision of this chapter with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:

(a) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2.501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the chapter on Secured Transactions (Chapter 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(b) Unless otherwise explicity agreed title passes to the buyer at the time and place at

goods purchased in this case were existing goods at the time of the making of the contracts and could have been withdrawn by PPG immediately thereafter at the rate provided for. The identification of goods to the contracts was made by the designation of Fina's specific tanks numbered 7, 10, 12 and 25, where the goods were contained and stored at PPG's expense.

None of the parties to the contracts under consideration here perceived, nor do they contend now, that the diesel oil sought in 1981 was in fact the very same diesel oil which was in existence at the time the contracts were executed in 1977. In this regard PPG presented testimony that there is some deterioration in the chemical properties of diesel oil in storage and that an attractive part of its contract was that the contents of Fina's storage tanks were being used and replenished on a daily basis from the pipeline to the Big Spring refinery so that the oil was always relatively fresh. Under these circumstances Fina contends that the contracts constituted contracts for the sale of goods at a future time. We disagree. The facts are that the specifications of the oil were carefully spelled out in PPG-Ayres contract and were described in the Ayres-Fina contract as being "of standard product specification." Presumably, the specifications of the oil in tanks 7, 10, 12 and 25 remained constant, since PPG's representatives withdrew samples periodically for testing. Such goods are "fungible" as defined in Section 1.201(17) of the code. The understanding that Fina would substitute other identical units of the goods originally existing and identified as the initial quantity purchased does not alter the basic character of the transaction as a present sale of existing, identified fungible

goods. That the parties considered the transaction as a present sale, we believe is further evidenced by: the very wording of the contracts that "buyer hereby buys and seller sells;" the fact that storage fees were paid by PPG; PPG required that its oil be insured against loss or injury and PPG was to pay for delivery of the oil directly from Fina's storage tanks.

This Court has previously held, against a claim that a transaction was one of future purchase, that

"While it is true that the term title was not mentioned in the contract, we conclude that the provision that the 'seller hereby sells' is sufficient to evidence a present sale and passage of title. Only the transfer of physical possession and payment of the balance of the purchase price were executory." *Miles v. Starks*, 590 S.W.2d 223 (Tex.Civ.App.—Fort Worth 1979), *cert. denied*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980).

Under the circumstances of this case, we hold that PPG became the owner of the 3,000,000 gallons of oil in 1977 and thereafter Fina was acting as a bailee of the oil holding possession for the benefit of the bailor and owner, PPG. *See Bullock v. Lone Star Gas Co.*, 558 S.W.2d 566, 570 (Tex.Civ.App.—Waco 1977), *rev'd on other grounds*, 567 S.W.2d 493, 99 S.Ct. 577 (1978). In the absence of any evidence that the value of the oil purchased by PPG was not commensurate with the amount paid, there is no evidence showing a gross disparity between them and we therefore sustain Fina's points of error numbers 9 and 10.

Since we have held that the judgment against Fina under the asserted DTPA

---

which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

(1) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment, but

(2) if the contract requires delivery at destination, title passes on tender there.

(c) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

(1) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

(2) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

causes of action cannot stand, we look now at the record to determine whether the record supports a judgment in favor of PPG upon any of the remaining causes of action. See TEX.R.CIV.P. 434.

In its motion for judgment on the verdict, from which we quote, PPG states that it is entitled to judgment upon the following causes of action, with damages as set out:

| " Theory | Damages | |
|---|---|---|
| DTPA Violations | Actual damages (trebled) Attorney's fees Prejudgment interest | |
| | Total | $10,279,601.63 |
| Breach of Contract | Value of its bargain Prejudgment interest Attorney's fees | 3,240,000.00 |
| | Total | $ 3,799,601.63 |
| Conversion | Actual damage Prejudgment interest Exemplary damages | (13,251,500.00) |
| | Total | $16,685,000.00 " |

After setting out its claimed entitlement above, PPG requested that it "be awarded the greater judgment to which it shows itself entitled."

Under these circumstances, we are called upon to determine whether the pleadings, proof, and verdict are sufficient to support a judgment for either conversion or breach of contract as requested in PPG's motion for judgment. The record shows that the jury found that Fina converted the 3,000,000 gallons of diesel fuel and found that its value on October 1, 1981 was $1.08 per gallon. From these findings, the court found PPG's damages to be $3,240.000. The jury also found that Fina acted with bad faith or malice in refusing to make the diesel fuel available and assessed exemplary damages against Fina in the amount of $25,570,308, apportioned to PPG in the sum of $13,251,500 and to Ayres in the sum of $12,318,808. Such findings would be sufficient to support a judgment for conversion and exemplary damages, were it not for other matters now discussed.

In points of error numbers 31 through 35 Fina claims reversible error in the overruling of its objections regarding improper jury argument. Before considering these points, we must rule on a motion filed in this case by Fina to accept its Bill of Exception and strike the Bystander's Bill of Exceptions filed by appellees. We grant the motion. After consideration of the two bills, we find the Bill of Exception is properly filed and will be considered in our disposition of the case. The Bystander's Bill, however, is not proper and will not be considered in this appeal.

In point of error thirty-two, Fina asserts the trial court erred in overruling Fina's objection to counsel for PPG's closing argument which paralleled this case to a criminal proceeding because such statements were outside the scope of the evidence adduced at trial and resulted in an improper and excessive jury award. Some of the statements made by PPG's counsel which are being complained of are as follows:

They were just going to commit a little bit of white collar crime, $2,230,500 worth.

You know, down the hall they're trying some fellow for stealing $43 to send him to the penitentiary. And a jury of people just like you have been empaneled to do justice.

No, you can't send American Petrofina, the corporation, to Huntsville. There's no way we can get Fina Plaza inside the walls.

Is it right to let them go free to take something that belongs to PPG and not give it up even though it's bought and paid for? Can you say, "I have been a just juror," when juries that have sat in these very chairs before you have sent people to the penitentiary for stealing—I don't know of a single jury that's ever had a theft case of $2,230,000 in this county.

How could you turn them loose and say, "Well, you know, give them the money back. That will be fine."

Fina made an objection at the bench which is shown in the Bill of Exception filed in this case. That objection was overruled and counsel for Fina was instructed to hold his motion for mistrial until the jury retired. The motion for mistrial was made and overruled.

We find the line of argument was improper. The case here was a civil action, not a criminal prosecution, and any analogy made to criminal conduct was improper. *International Harvester Co. v. Zavala,* 623 S.W.2d 699 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Another part of the argument complained of is as follows:

I hope that I have treated you and each of you with respect, because I do respect you. And we're about to give you a very, very awesome responsibility as judges of the facts in this case. And as such you are entitled to respect. You're entitled to intellectual honesty. You're entitled to a fair approach rather than snake oil. You are entitled to a discussion of what is right or wrong rather than some elementary approach that has nothing to do with the facts of this case. And when a man who has a degree in law from Southern Methodist University stands up and takes two hours of your time sprinkling it all through with "ain't been no" and things like that, I apologize for that, because he's trying to talk down to you. What does he think we are in Wichita County? What is he trying to do? Does he think that somehow scores some points? "Ain't been no."

I would resent that if I served on a jury.

■■■■ We find this argument to also be improper. We cannot condone attacks upon the professional ethics and integrity of opposing counsel.

■■ Our Supreme Court in *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835 (Tex.1979), set out the tests to which improper argument should be put if it is to transgress to the point of being reversible. It was there said that in such cases, the party urging reversal must prove (1) an error, (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge, (5) that the argument by its nature, degree, and extent constitut-

ed harmful error, (6) the argument's probable effect on a material finding, and (7) that a reversal can only follow an evaluation of the whole case beginning with voir dire and ending with closing argument. From all of the above factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Cf. World Wide Tire Co. v. Brown,* 644 S.W.2d 144 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

■■ This dispute arose solely because an eventuality, which all parties anticipated when they negotiated the two contracts in 1977, failed to materialize, i.e., a severe shortage of natural gas. In 1981, in the light of PPG's unrealized need for an alternate source of fuel, the parties were called upon to reinterpret their respective rights and obligations under the contracts which had lain virtually dormant for almost four years. Reduced to the simplest terms, the parties' views then became that PPG and Ayres wanted PPG to enjoy the increased value of its oil in selling it to others at the inflated prevailing price, and Fina contended that PPG had abandoned its rights to its oil and would be made whole by the return of its purchase price plus interest. Against such background, the application of the tests described in *Reese,* to our mind, results in the conclusion that the argument complained of was reversible.

The remarks of PPG's counsel constituted error in that they charged that Fina's counsel was untruthful and was trying to mislead the jurors with "corn pone," "snake oil," "another red herring," and "another untruth." The record includes all arguments of counsel and shows that such remarks were not invited or provoked. Since the trial court overruled Fina's objection, the error was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. The reference to the criminal theft case going on down the hall and the insinuation that Fina was guilty of a crime and that

other jurors who sat in the same chairs had sent people to the penitentiary for stealing less than $2,230,000 were patently error. We believe the cumulative nature of the improper remarks is sufficient to meet the nature, degree, and extent requirement of *Reese*. As to the arguments' probable effect on a material finding, we see no explanation of the jury award of a total of over twenty-five million dollars in punitive damages under the facts in this case, except that it was persuaded that Fina was guilty of criminal acts just like the thief being tried down the hall, and that the jury had a duty to punish as for a crime and that as "just jurors" they could not turn Fina loose. To our mind, the bias and prejudice meant to be engendered in the argument of PPG's counsel, coupled with the grossly excessive punitive damages awarded here establishes more than the required probability that such argument caused harm to Fina. We therefore would sustain points 31 through 35.

■ Another reason why a recovery cannot be permitted for conversion is found in considering Fina's complaint in points of error 29 and 30 that the trial court made an impermissible comment on the weight of the evidence by instructing the jury on matters the court had found as a matter of law. The instructions being complained of read as follows:

The Court now instructs you as to the law as it applies to this case and by which you will be bound in your deliberations:

a. Every contract imposes an obligation of good faith in its performance or enforcement.

b. The Court finds, as a matter of law, that the two contracts should be construed and considered together as one undertaking, inasmuch as they were entered into at approximately the same time, related to the same goods as subject matter, and neither would have been executed except in reliance upon the execution of the other.

c. The agreements contemplate a delivery rate not in excess of SIXTY THOUSAND (60,000) gallons per day of diesel fuel. PPG had the option of delivery to its Plant # 4 or other delivery destinations, with proper freight adjustment.

d. The agreements were to remain in effect for a primary term of five (5) years, unless extended in writing and not terminated.

e. At the expiration of the primary term, or upon termination, any diesel fuel which had been purchased and not previously delivered would be delivered by Seller in the manner and at the rate set out above.

f. The Court finds, as a matter of law, that Fina sold 3,000,000 gallons of diesel fuel to Ayres under a contract of sale dated September 1, 1977.

g. The Court finds, as a matter of law, that Ayres sold 3,000,000 gallons of diesel fuel to PPG under a contract of sale dated August 28, 1977.

h. The Court finds, as a matter of law, that the 3,000,000 gallons of diesel in question are the same goods as are referred to in both contracts of sale.

i. The Court finds, as a matter of law, that PPG was the owner of the 3,000,000 gallons of diesel fuel oil at all times after Fina accepted payment therefor on September 21, 1977.

j. It is the obligation of a seller to transfer and deliver any goods or property which are the subject of a contract of sale, and the obligation of the buyer to pay for such goods or property in accordance with the contract.

TEX.R.CIV.P. 277 allows the court to submit "such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict." The rule also requires that the court not comment on the weight of the evidence or advise the jury of the effect of their answers. Fina argues that the above instructions were not necessary to aid the jury in their deliberations and therefore, they constitute an impermissible comment on the weight of the evidence. In support of their argument, Fina relies on the case of *Bd. of Regents v.*

*Denton Const. Co.*, 652 S.W.2d 588 (Tex. App.—Fort Worth 1983). In that case the trial court withdrew from the jury's consideration and rendered judgment on certain elements of damages. The court then instructed the jury on these findings. This court found that such instruction was erroneously prejudicial. *Bd. of Regents, supra* at 595.

The instruction in this case was not as strong as the one in *Bd. of Regents* and it does contain some statements which may have been helpful to the jury in their deliberations. However, it is clear that when the jury followed the instructions in letters f through j, they would be required to find in favor of PPG on the conversion issues. These instructions were not necessary and should be considered an impermissible comment on the weight of the evidence. We sustain Fina's points 29 and 30.

■ For those reasons a judgment in favor of PPG for conversion would be foreclosed. Regarding the breach of contract pleading and proof, we would find that the jury verdict is untainted as to breach, damages, and amount of attorney's fees and would affirm a judgment against Fina in the amount of $4,799,601.63 as prayed for in PPG's motion for judgment. However, for this court to reform the judgment and allow such recovery for breach of contract would deprive PPG of its right to re-assert its claim for conversion in another trial. Accordingly, we must reverse and remand for a new trial.

■ As we previously noted, Ayres was awarded judgment against Fina in excess of PPG's judgment against it, and Ayres has not appealed. Ordinarily our judgment of reversal as to Fina would not justify a reversal as to Ayres. An exception to the rule exists however, as the Court recognized in *Great American Health Life Ins. Co. v. Lothringer*, 422 S.W.2d 543 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.). It was there written:

[5] As this court stated in *Curtis v. Carey*, Tex.Civ.App, 393 S.W.2d 185, 191 (Tex.Civ.App.1965)

"It is the general rule that where one party appeals from a judgment, a reversal as to him will not justify a reversal against the other non-appealing parties. This rule, however, does not apply in cases where the respective rights of the appealing and non-appealing parties are so interwoven or dependent on each other as to require a reversal of the whole judgment where a part thereof is reversed. *Lockhard v. A.W. Snyder & Co.*, 139 Tex. 411, 163 S.W.2d 385, 392; *American Indemnity Co. v. Martin*, 126 Tex. 73, 84 S.W.2d 697; Appellate Procedure in Texas, Sec. 18.13."

The judgment against Fina having been reversed and remanded, we hold that this is a proper case for the application of the above stated exception to the general rule, and the judgment against Ayres is also reversed and remanded.

## II. JUDGMENT IN FAVOR OF AYRES

The judgment against Fina in favor of Ayres was for damages as a result of tortious interference with the PPG-Ayres contract and also awarded total indemnification for PPG's damages adjudged against Ayres.

We reverse and render.

Fina raises seven points of error in its complaint of the judgment granted for tortious interference with Ayres Oil's contract with PPG. They basically argue: 1) the alleged breach by Fina of the fuel purchase agreement with Ayres Oil does not constitute a cause of action sounding in tort; 2) no evidence, or factually insufficient evidence exists to support the jury's finding under Special Issue No. 19(B) that Fina acted with actual malice in interfering with the Ayres-PPG contractual relationship; and 3) there is no evidence or factually insufficient evidence that Ayres Oil sustained any actual damages as a result of the alleged tortious interference.

The jury was submitted the following issues on the tortious interference with contract theory:

15a. Do you find that Fina, by its failure and refusal to deliver the diesel fuel, prevented Ayres from performing its contract of August 28, 1977, between Ayres and PPG?

15b. Do you find that Fina's failure to deliver the diesel fuel was the sole proximate cause of PPG's filing this lawsuit against Ayres?

16. Do you find that Fina's failure to deliver the diesel fuel was a proximate cause of damages to Ayres?

17. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Ayres for its actual damages, if any, proximately caused by Fina's failure and refusal to deliver the diesel fuel in question? In answering this issue, you are instructed that you should consider the following elements of actual damages, if any, and none other.

Answer in dollars and cents or "none" in the space provided by each such element.

a. Excess interest costs, if any, incurred in the past.

b. Excess interest cost, if any, which, in reasonable probability, will be incurred in the future.

c. Loss of discounts, if any, which were incurred.

d. Diminution, if any, in the fair market value of the business reputation and good will of Ayres.

e. The fair market value per gallon of the 3,000,000 gallons of diesel on or about September 18, 1981 in Wichita County, Texas.

18. Do you find that Ayres would have performed its contract of August 28, 1977, with PPG, if Fina had delivered such diesel fuel?

19a. Do you find that Fina has acted with bad faith or malice in connection with its refusals to make the diesel fuel in question available?

19c. What amount of money, if any, should be assessed against Fina as exemplary damages?

The jury found in favor of Ayres Oil on all the issues. Under the damages issue the jury awarded $9,764 as excess interest costs incurred in the past; $116,725 excess interest cost incurred in the future and they awarded $13,251,500 as exemplary damages.

 In maintaining a cause of action for tortious interference with contract, it must be established that (1) there was a contract subject to interference; (2) the act of interference was intentional and willful; (3) such intentional act was a proximate cause of plaintiff's damage; and (4) actual damage or loss occurred. *Armendariz v. Mora,* 553 S.W.2d 400 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

Not all interferences with contractual relations are tortious in nature.

"An important element in a right of recovery for contract interference is that the interference must be without right or justification. Interference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possesses an equal or superior interest to that of the plaintiff in the subject matter."

*Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 90 (Tex. 1976). *See also Intern. Bank of Commerce v. Union Nat. Bank,* 653 S.W.2d 539 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Terry v. Zachry,* 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.); 45 Am.Jur.2d Interference sec. 27, at 304–05.

 There is no evidence that Fina acted under anything other than a good faith belief that it was not required to deliver oil which had tripled in value over four years of inactivity in a transaction which contemplated frequent purchases and use of the oil at the prevailing rates. Although the trial court found, and this court concurs, that the two contracts are to be construed together, we cannot say that Fina could not have had the conviction that it was bound only by the provisions of its contract with its distributor, Ayres. Nor can it be said that the withholding of PPG's

oil, which we have found to constitute conversion as to PPG, was necessarily tortious conduct as to Ayres. Neither complete innocence nor perfect good faith are defenses to an action for conversion. *White-Sellie's Jewelry Co. v. Goodyear Tire & Rubber Co.*, 477 S.W.2d 658, (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ); *Chrysler Credit Corp. v. Malone*, 502 S.W.2d 910, (Tex.Civ.App.—Fort Worth 1973, no writ). Whereas, such complete innocence and perfect good faith might very well be the basis of the justification which constitutes a defense to a claim for tortious interference with a contract.

■ Fina also raises the question of whether the proper measure of damages regarding the tortious interference with contractual relations cause of action was submitted to the jury. Ayres initially counters by saying that Fina's objection was not specific enough to preserve error. The objection made is as follows:

> On Special Issue No. 17, the Fina Defendants would object and except for the reason that the damage items which are listed here do not constitute the proper measure of damages for a tortious interference with contractual and/or business relations case, and as such, to include in the Court's charge the alleged damages listed in Items (a) through (e) constitute an improper submission and do not set forth any damages that would be properly recoverable under such a cause of action. For such relief the Fina Defendants would pray that the damage items be deleted from the Court's charge in their entirety.

This is precisely the point raised on appeal and the objection made at trial was specific enough to apprise the court of the complaint being made.

■ When the plaintiff is prevented from performance of his contract with a third person, the plaintiff may recover expenses to which he is put or other pecuniary losses incurred in making his performance good. RESTATEMENT (SECOND) OF TORTS, sec. 77A (1979). The damages sought by Ayres have no connection whatsoever to its making performance good under its contract with PPG. It is seeking to recover excess expenses of its business because it could not get a loan at its usual rate of interest due to the fact this lawsuit was filed. The reason Ayres was seeking the loan was not so it could fulfill its contract with PPG, but because there was a cash flow problem with accounts receivable.

There was no evidence that Ayres Oil made any attempt to make good on its contract with PPG by delivering any fuel. Because Ayres had previously received the jobber's commission from PPG and had collected $120,000 storage fees, it had in fact already received the benefit of its contract with PPG.

■ The law governing the area of tortious interference with contract is not a well developed area. From our review of the cases and our review of the facts in this case, we do not find that Fina's failure to deliver the diesel fuel constitutes a cause of action sounding in tort. We also find that the proper measure of damages was not submitted to the jury. Under these holdings, Ayres is not entitled to the award of actual damages. Since an award of actual damages is a necessary predicate to the recovery of exemplary damages, Ayres is also precluded from recovering exemplary damages. We sustain points of error 15 and 22.

We feel it important to note that the jury argument which we previously found to be improper would require reversal of this portion of the case had the award of actual damages been approved. It is apparent from the excessive award of exemplary damages (nearly 100 times the award of actual damages) that the jury was in all probability affected by the improper argument. Inasmuch as the award of exemplary damages is being denied, we do not find that the improper argument requires reversal.

Although this court has treated all controlling issues presented by proper points of error, the parties have other points and

cross-points. All of such have been considered, all are lacking in merit and all are overruled.

The money judgment granted in favor of Ayres is reversed and judgment is rendered that Ayres take nothing. Inasmuch as we have reversed and remanded PPG's judgment against both Fina and Ayres, that portion of Ayres' judgment awarding it indemnification against Fina is also reversed and the cause remanded.

Costs are taxed one-third to PPG, one third to Ayres and one-third to Fina.

HUGHES, J., dissents.

HUGHES, Justice, dissenting.

I respectfully dissent in that I would affirm the judgment rendered for PPG in this cause. Basically, I agree with the reasoning in the majority opinion but have to disagree with the disposition of appellant's point of error ten. In the first place, *Flenniken v. Longview Bank and Trust Company*, 661 S.W.2d 705 (Tex.1983) effectively disposes of the Fina argument that, as no transfer of consideration occurred between Fina and PPG, Fina could not have engaged in unconscionable conduct. The majority opinion concludes that there was no gross disparity between value received and consideration paid. I disagree. According to the evidence PPG paid Ayres Oil $1,080,000 in 1977 for the purchase of three million gallons of diesel fuel. Ayres Oil in turn paid Fina $1,039,500 for the purchase of three million gallons of diesel fuel. PPG requested delivery of the fuel in 1981. Fina refused to deliver. The jury also had before them an interoffice memo from Robert Low, vice president of Fina, to P.D. Meek, president of Fina. That memo stated:

> Basically, we've had the use of the customer's $1 million for four years, and now they want to take their product (which we've also had the use of for that time.)

Under the definition of unconscionable conduct, the jury had sufficient evidence before them to find that a gross disparity resulted between the value received and the consideration paid. *Miller v. Soliz,* 648 S.W.2d 734 (Tex.App.—Corpus Christi 1983, no writ); *R.S. Assoc. Gen. Bldg. Contractors v. Devona,* 610 S.W.2d 190 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Appellant's tenth point of error should be overruled in light of TEX. BUS. & COM.CODE ANN. sec. 17.44 (Vernon Supp.1984), which requires that the Act be:

> [L]iberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

Point of error ten should be overruled.

We turn now to the points of error regarding damages under the DTPA. In their eleventh and twelfth points of error, Fina complains that there was no finding of actual damages on the part of PPG by the jury. In its charge, the court submitted five different dates and asked the jury to find the fair market value of diesel fuel on those dates. We fail to see the reason for submitting five different dates. The court then entered its judgment awarding $3,240,000 actual damages. It appears that the trial court simply multiplied $1.08 (the fair market value found by the jury on October 1, 1981) by 3 million (the number of gallons PPG purchased).

Fina complains that the issues as submitted were evidentiary. The parties are also in dispute as to what the proper measure of damages is under the DTPA.

The proper measure of damages to be assessed is a question of law for the court. *Johnson v. Willis,* 596 S.W.2d 256 (Tex.Civ. App.—Waco), *writ ref'd n.r.e. per curiam,* 603 S.W.2d 828 (Tex.1980). The court stated in its judgment that it was awarding PPG the benefit of their purchase.

Section 17.50 of the DTPA allows recovery of the amount of actual damages found by the trier of fact. Actual damages has been defined as those damages which are

recoverable at common law. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). The courts have interpreted sec. 17.50 as allowing recovery of the greatest amount of actual damages pled and proven. *Johnson v. Willis,* 596 S.W.2d at 263; *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

Here the greatest amount of damages would be the loss of the benefit of their bargain. All but one of the facts necessary to determine the amount of damages were uncontroverted and found by the court. The only fact remaining to be found was the fair market value of the fuel on the date the breach occurred. Therefore, asking the jury to find fair market value of the fuel was not an evidentiary issue. Under TEX.R.CIV.P. 279, only controlling issues are to be submitted to the jury. Since the fair market value was the only fact undetermined it was not necessary to frame the issue in terms of what amount of money, if any, would fairly and reasonably compensate plaintiffs for their actual damages.

The trial court made the finding in its judgment that the date the fuel was requested and delivery was refused was October 1, 1981. In their reply brief, Fina argues that the use of the fair market value on October 1 was improper because the uncontroverted evidence shows that PPG first learned of Fina's refusal to deliver on September 18, 1981. PPG did not submit any issue which asked the jury to determine when PPG learned of the breach. The only issue submitted asked:

Do you find that it was on or about September 18, 1981, that Ayres first learned of Fina's refusal to deliver the diesel fuel referred to in the contract between Ayres and Fina dated September 1, 1977?

The evidence at trial showed that in September 1981, PPG inquired into the delivery of 1.4 million gallons of fuel. On or about September 18, 1981, PPG learned from Ayres Oil that the fuel would not be made available. On October 1, 1981, PPG, Ayres Oil and Fina met face to face. Fina was requested to deliver the full three million gallons of fuel and delivery was refused by Fina. The evidence supports the court's finding that all the fuel was requested and delivery refused on October 1, 1981. The eleventh and twelfth points of error should have been overruled.

I agree with the majority opinion that the argument complained of in point of error thirty-two was improper and should not have been made. I do not condone the attacks made upon the professional ethics of counsel on the other side of a lawsuit.

We cannot presume, however, that the improper argument was harmful. In *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835 (Tex.1979), the Supreme Court set out the factors to be considered in determining harm from improper jury argument. The complainant must show:

(1) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine

(2) the argument's probable effect on a material finding.

(3) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence.

In view of my opinion on appellant's other points of error and my review of the entire record I do not find the argument to be reversible error. PPG presented sufficient evidence that entitled it to some sort of recovery from Fina and the probabilities are that the jury would have reached its

same conclusion on liability from the evidence without regard to PPG's argument.

The judgment granted in favor of PPG should be affirmed.

I do not disagree with the majority opinion in its reversal of the Ayres suit against Fina.