**CHRYSLER CREDIT CORPORATION, Appellant,**

**v.**

**Bobby MALONE, Individually and d/b/a Bobby Malone Insurance Agency, Appellee.**

**No. 17448.**

Court of Civil Appeals of Texas, Fort Worth.

Nov. 30, 1973.

Rehearing Denied Jan. 4, 1974.

Irion, Cain, Magee & Davis, and Tedford E. Kimbell, Dallas, for appellant.

Miteff & Webb, and Meto Miteff, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

The plaintiff, Chrysler Credit Corporation, sued defendant, Bobby Malone, individually and d/b/a Bobby Malone Insurance Agency, seeking to recover damages for the conversion of a 1970 Chrysler automobile on which the plaintiff owned a security interest.

A trial before a jury ended with defendant being awarded a judgment to the effect that plaintiff take nothing from him and from that judgment the plaintiff has appealed. The parties will be referred to herein as they appeared in the trial court.

Undisputed facts in the case were: Worthey Forest Park Chrysler-Plymouth Company was an automobile dealer in Fort Worth; on May 20, 1970, it was engaged in the business of selling new and used automobiles and it had on that date, as a part of its inventory, the 1970 Chrysler automobile that is the subject matter of this lawsuit; on that date the plaintiff held a valid, existing and unsatisfied security interest in that 1970 Chrysler in the amount of $4,763.93 as a result of furnishing the dealer the money with which to buy the car from the manufacturer; as of that date the Worthey Company dealership owed the defendant, Malone, and his insurance agency almost $10,000.00 for insurance premiums on insurance policies that defendant had obtained and sold to the dealership prior to that date; on May 20, 1970, Malone tried to get a payment on these past due premiums from the Worthey Company dealership and on the morning of May 20, 1970, the Worthey Company dealership did issue and deliver to Malone a check for $5,000.00, payable to Bobby Malone Insurance Agency, which was given in part payment of these past due insurance premiums; Bobby Malone Insurance Agency was defendant's trade name; Malone

never did deposit this check for collection; on the afternoon of May 20, 1970, Malone returned to the Worthey Company dealership and purchased from that dealership the 1970 Chrysler automobile in question for a price of $4,763.93; on this occasion Malone endorsed the dealer's $5,000.00 check that the dealer had given him that morning and gave it back to the dealer as payment in full for the car; after the tax and cost of license plates were added to the purchase price the bill lacked about $68.00 totaling $5,000.00; when Malone gave back to the Worthey Company the $5,000.00 Worthey Company check as payment for the car, the Worthey Company gave him the car and $68.00 in change plus a bill of sale to the car; Malone did not part with any cash or with anything else in buying the car except the return to the dealer of the dealer's check.

The plaintiff's contention below was, and in this Court is, that as a matter of law because of the undisputed facts in the case the defendant, Malone, was not a "buyer in ordinary course of business" as defined in V.T.C.A., Bus. & C., Sec. 1.201(9) because the car was sold and transferred to him by the Worthey Company in exchange for the cancellation of a money debt that the seller owed the buyer. Plaintiff contends that since this is true the transaction did not result in its security interest in the car being extinguished and that the court therefore erred in rendering judgment for defendant.

We sustain plaintiff's contentions and reverse the judgment.

Defendant seeks to uphold the judgment in his favor because, he says, that he was a "buyer in ordinary course of business" in that he did not receive the automobile in total or partial satisfaction of a money debt due and owing to him. The defendant would have been entitled to win this case only if he was right in this contention.

So the real controversy in the case existed over the question of whether the Chrysler automobile was sold and transferred to Malone by the dealer in total or partial satisfaction of a money debt that the dealer then owed to Malone.

The following provisions are contained in the Texas Business and Commerce Code which was enacted in 1967:

"A buyer in ordinary course of business (Subdivision (9) of Section 1.201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Sec. 9.307(a).

" 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but *does not include a transfer* in bulk or as security *for or in total or partial satisfaction of a money debt.*" Sec. 1.201(9). (Emphasis supplied.)

The briefs of the parties make it apparent that they are in agreement that the decision in this case is controlled by a construction of those two statutes and by making a proper application of them to the facts of this case.

Associates Discount Corp. v. Rattan Chevrolet, Inc., 462 S.W.2d 546 (Tex.Sup., 1970) holds that Sec. 9.307(a), Bus. & C., V.T.C.A., applies to the sale of motor vehicles.

■ It is undisputed that on the morning of May 20, 1970, the Worthey dealership owed Malone nearly $10,000.00 for past due insurance premiums. This was a debt on an open account. On that same morning the Worthey dealership executed

and delivered to Malone the $5,000.00 check in which his agency was named as the payee, and it was given to Malone to replace a part of the $10,000.00 debt that the dealership owed to Malone. This transaction did not alter the fact that the Worthey dealership was still indebted to Malone for the $10,000.00 It simply changed the form of a part of the debt. The check was evidence that the maker of the check (the dealership) was indebted to the payee, Malone, in the amount of $5,000.00. V.T.C.A., Bus. & C. Code, Sec. 3.413(a). The check was merely an order to Worthey Company's banker to pay to the payee, Malone, out of the maker's bank account, the amount of the check. The balance of the $10,000.00 debt was still in the same form that it had always been in.

■ We hold that when the payee therein, Malone, endorsed the dealer's $5,000.00 check back to its maker and redelivered it to its maker in satisfaction of and in extinguishment of the debt that was evidenced by the check in exchange for the sale and transfer to the payee of the 1970 Chrysler car, that such transaction constituted a transfer of the car for or in partial satisfaction of a money debt that the transferor then owed to the transferee of the car.

This being true, Malone was not a "buyer in ordinary course of business" in the transaction in question within the meaning of the Business and Commerce Code of Texas, Sec. 1.201(9), as set out above, and the transaction whereby Malone bought the car therefore did not extinguish the plaintiff's security interest in the car. See Sec. 9.306(b) and Sec. 9.307(a) of the same statute.

The trial court submitted two special issues to the jury which he intended to cover the issue of whether defendant was a buyer in ordinary course of business. Number 1 asked if Malone acted in good faith in receiving the auto from the Worthey Company, and No. 2 asked "Do you find . . . that at the time the $5,000.00 check in question was delivered to Mr. Malone that he did not intend to exchange said check in payment of the automobile in question?"

The jury's findings were that Malone acted in good faith and that he did not intend at the time he received the check to exchange it in payment for the car.

We hold that the court erred in rendering judgment based on the jury's answers to those issues, because those issues alone did not determine the question.

The controlling issue in this case was the question of whether or not in the May 20, 1970 transaction in which Malone purchased the car he was a "buyer in ordinary course of business" as that term is defined in Sec. 1.201(9), Bus. & C., V.T.C.A. If Malone was not such a buyer, then plaintiff's security interest was not cut off by the sale to Malone. Section 9.306(b), Bus. & C., V.T.C.A. If he was such a buyer, then plaintiff's security interest was cut off by the sale. Section 9.307(a), Bus. & C., V.T.C.A.

The jury's answers to these two special issues do not alone determine this controlling issue. Our holding is that the undisputed evidence in this case establishes as a matter of law that defendant was not a "buyer in ordinary course of business" within the meaning of the statute because the car was transferred and sold to him by the dealer in partial satisfaction of a money debt that the dealer owed to Malone.

We find no Texas case directly in point, but, as being persuasive of our holding, see Commercial Cr. Corp. v. Joplin Automobile Auction Co., 430 S.W.2d 440 (Ct. of App., Mo., 1968) and Sherman v. Roger Kresge, Inc., 67 Misc.2d 178, 323 N.Y.S.2d 804. In this last case a buyer of a car wrote a check payable to the dealer in payment for the car and gave it to the dealer. The dealer simply endorsed the check and handed it back to the buyer who applied it in partial satisfaction of the dealer's pre-existing running account with the buyer.

The controlling question in that case was whether the buyer was a "buyer in ordinary course of business" within the meaning of UCC, Sec. 1—201(9). The court said at page 806: "The definition of buyer in the ordinary course of business as found in UCC, § 1—201(9) clearly excludes a transaction by which payment is credited in total or partial satisfaction of a money debt. By paying Miller with his check and accepting it back in such partial satisfaction of his account, the defendant may no longer maintain that he is a buyer in the ordinary course of business."

Plaintiff contends in its 3rd point of error that the trial court erred in finding that as a result of the jury's answers to special issues Nos. 1 and 2 that Malone was a buyer in the ordinary course of business of the 1970 Chrysler car.

Plaintiff's 4th point of error urges that the trial court erred in overruling his motion for new trial and in entering judgment for Malone based on the jury's answers to special issues Nos. 1 and 2 for the reason that the answers to those two issues together do not establish that Malone was a buyer in the ordinary course of business of the car in question.

We sustain both of these points of error for the reasons above stated and hold that such errors require that the case be reversed.

The security agreement covering the car in question provides the following:

"The trustee agrees to keep the property at the address indicated on the reverse hereof and further agrees that the possession by the trustee of the property is solely for the purpose of selling or exchanging it or of procuring the sale or exchange of the property to a buyer in the ordinary course of the trustee's business."

The sale of the car to Malone, who was not a "buyer in ordinary course of business," was, therefore, unauthorized. In the event of an unauthorized sale the Texas Business and Commerce Code authorizes the secured creditor to maintain an action for conversion against the transferee. See V.T.C.A., Bus. & C., Sec. 9.-306(b) and official comment No. 3 thereunder at page 357, and White-Sellie's Jewelry Co. v. Goodyear Tire & Rub. Co., 477 S.W.2d 658 (Houston (14th), Tex.Civ. App., 1972, no writ hist.). And this same case holds that it was not necessary that plaintiff make a demand upon defendant for possession of the goods and that defendant refuse same before there could be a conversion of the property.

Our Supreme Court defines a conversion as "The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights. . . ." See Waisath v. Lack's Stores, Inc., 474 S.W. 2d 444 (1971).

We hold that as a matter of law a conversion of plaintiff's security interest in the car occurred when Malone took possession of the car through the unauthorized sale of it by the dealer to Malone and removed the car from the dealer's place of business in violation of the terms of the security agreement and began driving the automobile as his family car. Malone's actions constituted an exercise of dominion and control over the car that was inconsistent with the plaintiff's rights in such car and constituted a conversion of plaintiff's interest in the car. See White-Sellie's Jewelry Co. v. Goodyear Tire & Rub. Co., supra, which case holds that the owner of a security interest in personalty is entitled to bring a suit for the conversion of such security interest. See also Commercial Cr. Corp. v. Joplin Automobile Auction Co., 430 S.W.2d 440 (Ct. of App., Mo., 1968).

The fact that defendant might have acted innocently and in perfect good faith is not a defense to a suit for a conversion. White-Sellie's Jewelry Co. v. Goodyear Tire & Rub. Co., supra, and Commercial

Cr. Corp. v. Joplin Automobile Auction Co., supra.

We are holding that the plaintiff established by the undisputed evidence in this case that: 1. Plaintiff owned a valid security interest in the car that had been perfected; 2. Malone was not a "buyer in the ordinary course of business" of that car; and 3. Malone converted plaintiff's security interest in the car.

 There was one other fact that was an essential element of plaintiff's cause of action that it was necessary for plaintiff to establish by evidence. That was the reasonable cash market value of the car at the time and place of the conversion.

The record in the case reveals that the case was tried in the trial court on the theory that if the reasonable cash market value of the car involved equalled or exceeded the amount of plaintiff's security interest in the car then, if plaintiff was entitled to recover on the theory that Malone had converted plaintiff's security interest, his measure of recovery would be the amount of the security interest.

On the other hand if the value of the car did not equal or exceed the amount of plaintiff's security interest in the car, then plaintiff's recovery would be limited to and could not exceed the reasonable cash market value of the car at the time and place of the conversion.

From this it is quite obvious that the question of what was the reasonable cash market value of the car at the time and place of the conversion was a material issue in the case. It was an essential element of plaintiff's cause of action for conversion.

The trial court in its judgment found that the market value of the car in question on May 20, 1970, was greater than $4,763.93, which was the amount of the plaintiff's security interest. The appellee herein, Malone, has not attacked this finding by cross assignments or otherwise.

Under this set of facts and the undisputed evidence referred to above, the trial court erred in rendering judgment for defendant and in not rendering judgment for the plaintiff.

It is our duty, under the facts of this case, since we are required to reverse this case, to render the judgment that the trial court should have rendered. Rule 434, Texas Rules of Civil Procedure.

When a plaintiff recovers damages in a conversion action he is entitled to recover also 6% interest thereon from the date of the conversion. Flores v. Didear Van & Storage Company, Inc., 489 S.W.2d 406 (Corpus Christi, Tex.Civ.App., 1972, no writ hist.).

We have not discussed some of plaintiff's points because they have become immaterial in view of our holding on the points that we have discussed.

The trial court's judgment is reversed and judgment is rendered that the plaintiff, Chrysler Credit Corporation, recover from the defendant, Bobby Malone, the sum of $4,763.93 plus 6% interest on that sum from May 20, 1970.