Greg and Donna **CRUTCHER**,
Appellants,

v.

**CONTINENTAL NATIONAL
BANK**, Appellee.

No. 08–94–00026–CV.

Court of Appeals of Texas,
El Paso.

Sept. 15, 1994.

Rehearing Denied Oct. 19, 1994.

David J. Kimmelman, Gage, Beach & Ager, El Paso, for appellants.

David M. Driscoll, Potash, Bernat, Sipes & Bernat, P.C., M. Kyle Lasley, Kemp, Smith Duncan & Hammond, P.C., El Paso, for appellee.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

## OPINION

KOEHLER, Justice.

In this summary judgment appeal, the primary question is whether a bank owed a duty to its former customers who held unrecorded liens against twenty-seven trailers, to investigate before complying with a request by the title owner of the trailers to execute releases of liens in connection with the owner's applications for title on grounds that the original titles had been lost or destroyed. The trial court concluded that the bank owed no such duty and granted the bank's motion for summary judgment. We affirm.

## FACTUAL BACKGROUND

Continental National Bank (Bank), Appellee, began its banking relationship with Rio Grande Distributing Company, Inc. (Rio Grande) in May 1988. At that time, the sole shareholders of Rio Grande were Greg Crutcher and Donna Crutcher, Appellants. In September 1988, Rio Grande applied to and received from the Bank a letter of credit, issued on October 31, 1988, in the amount of $100,000, secured both by liens against, and subsequently noted on the certificates of title of, twenty-seven trailers and by the personal guarantees of Appellants. In December 1988, Appellants sold all of their shares in Rio Grande to Douglas Crutcher, Greg Crutcher's cousin, receiving as consideration a $600,000 note, which was secured by various collateral, including liens against the same twenty-seven trailers which had previously secured the letter of credit. The Bank was informed by Appellants of the sale but did not review any of the documents pertaining to the sale. Appellants returned the unused letter of credit to the bank which thereupon canceled the letter and released its liens on the certificates of title on February 7, 1989, delivering the certificates to Appellants at that time. The Bank had no further banking relationship with Appellants after February 1989 and no further banking relationship with Rio Grande and Douglas Crutcher after March 2, 1989 when all outstanding loans were paid off.

Rio Grande and Douglas Crutcher subsequently defaulted on the $600,000 note. It was only after default that Appellants on June 1, 1992, attempted to have their liens on the trailers recorded on the titles. Their applications for new certificates of title showing Appellants as first lienholders were submitted to the Texas Department of Transportation (Transportation Department) and were rejected. Because of the rejections, Appellants learned that Douglas Crutcher as president of Rio Grande had in April 1992 requested and obtained from the Bank releases of its liens on the trailers in connection with Rio Grande's applications for certificates of title based on Rio Grande's (and Douglas Crutcher's) representations that the original certificates of title had been lost or destroyed. Appellants also learned that Douglas Crutcher, after obtaining clear titles, had then sold some of the trailers to other parties.

After suing and obtaining judgment against Douglas Crutcher, Appellants filed this action against the Bank on theories of negligence, breach of fiduciary duty, breach of good faith duty and violation of Uniform Commercial Code, Section 5.109, seeking damages occasioned by the sale of the trailers against which they claimed liens. The Bank moved for, and was granted, summary judgment on the grounds that it owed no duty to Appellants to protect their unperfected liens on the trailers, Rio Grande (the party requesting the execution of the releases of liens) being the title owners of said trailers. Appellants here claim in two points of error that there are genuine issues of material fact which preclude summary judgment and the Bank failed to show that it is entitled to judgment as a matter of law.

## STANDARD OF REVIEW

In reviewing a summary judgment appeal, we must determine whether the successful

movant in the trial court carried its burden of showing that there is no genuine issue of a material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a fact issue precluding summary judgment, evidence favorable to the non-movants is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movants resolving any doubts in their favor. *Nixon*, 690 S.W.2d at 548–49. If the defendant is the movant and it submits summary judgment evidence disproving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ). A summary judgment cannot be affirmed on any grounds not presented in the motion for summary judgment. *Hall v. Harris County Water Control & Improvement Dist. No. 50*, 683 S.W.2d 863, 867 (Tex.App.—Houston [14th Dist.] 1984, no writ).

### DID THE BANK OWE A DUTY?

The primary ground asserted in the Bank's motion for summary judgment was that the Bank owed Appellants no duty under the facts. Appellants argue on appeal that a genuine issue of material fact existed with regard to whether a fiduciary duty existed between Appellants and the Bank. Appellant, citing numerous cases, notes that whether a fiduciary or confidential relationship exists is a question of fact to be determined by the jury. *See Schiller v. Elick*, 150 Tex. 363, 240 S.W.2d 997, 999 (1951); *Page Airways, Inc. v. Associated Radio Serv. Co.*, 545 S.W.2d 184 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). Fiduciary relationships include those informal relationships which exist whenever one party trusts and relies upon another. *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708–09 (Tex.1990); *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502 (Tex.1980). As a

general rule, the relationship between a bank and its customers does not create a special or fiduciary relationship. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 902 (Tex.App.—Corpus Christi 1989), *aff'd in part, rev'd on other grounds*, 811 S.W.2d 931 (Tex.1991). In the case we are reviewing, Appellants have alleged no facts and presented no summary judgment evidence establishing or tending to establish that any special or confidential relationship existed between them and the Bank other than as borrower and lender.[1] Although Appellants argue that they began a "long relationship" with the Bank as a result of their friendship with William Waddell, vice-chairman of the Bank's board, the summary judgment evidence shows that the relationship was of rather short duration, from May 1988 to February 1989, consisting primarily of two loans and the unused letter of credit. The assertion of Appellant Greg Crutcher (in his affidavit in opposition to the Bank's motion for summary judgment) that Appellants "relied on Mr. Waddell to advise us with respect to all financial matters conducted through Continental National Bank," could not create a fiduciary duty on the part of the Bank to give them legal advice on the necessity of, or how to go about, perfecting their liens on the trailers. We conclude that there is no summary evidence that creates a genuine issue of material fact with regard to Appellants' contention that a special or fiduciary relationship existed between them and the Bank.

Appellants also argue that a duty was imposed under the Texas Business and Commerce Code, Uniform Commercial Code (UCC) sections 5.109 and 1.203. Section 5.109 relates to the performance of an issuer's obligation under the terms of a letter of credit, with the extent of the issuer's obligation to its customer based upon the agreement between the parties. TEX.BUS. &

---

1. Although Appellants were technically guarantors of the credit extended to Rio Grande rather than borrowers, because they were the sole shareholders of Rio Grande they were in effect the borrowers.

Com.Code Ann. § 5.109 (Vernon 1968).[2] Section 1.203 relates to the obligation of good faith in the performance or enforcement of contracts governed by the Uniform Commercial Code (UCC). Tex.Bus. & Com.Code Ann. § 1.203 (Vernon 1968). Although the Bank issued a letter of credit, a form of contract, in October 1988, the letter of credit was never used by Appellants. The unused letter of credit was subsequently returned to the Bank for cancellation in early February 1989. The conduct complained of by Appellants is with regard to the Bank's execution of the releases of liens (on the Transportation Department's Form 34s) at the request of Doug Crutcher (and thus of Rio Grande) more than three years after the letter of credit was canceled and after all banking relations between the Bank and both Appellants and Rio Grande (including Doug Crutcher) had ended. Appellants, nonetheless, argue that the Bank's agreement, as expressed in a letter from Mr. Waddell to Appellants dated January 4, 1989, "to assign each title [of the twenty-seven trailers] over to you when they are returned to us from the appropriate office of the State of Texas[.]" was part of a "contract," for purposes of the applicable UCC provisions. Appellants cite no authority, nor are we aware of any, to support the argument that a bank's agreement to assign certificates of title to vehicular collateral creates a new contract under the UCC with an obligation on the part of the bank to do anything more than assign the titles to Appellants as it received them from the Transportation Department. The Bank did in fact assign and deliver the titles to Appellants as they were received. The Bank owed no continuing duty under the UCC to Appellants subsequent to the cancellation of the letter of credit in February 1989.

Appellants advance one further theory of duty, the common law "duty to exercise ordinary care under the existing circumstances." "[T]he duty of ordinary care at common law may arise not only as a matter of legal relation, but it may also arise from a knowledge of the danger, which in turn depends upon the probability of injury." *Bennett v. Span Indus., Inc.*, 628 S.W.2d 470, 473 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). *See also United States v. Schultetus*, 277 F.2d 322 (5th Cir.1960), *cert. denied*, 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960). However, the question of whether a duty exists under the facts and circumstances is a question of law. *J.R. Beadel and Co. v. De La Garza*, 690 S.W.2d 71, 73 (Tex.App.—Dallas 1985, writ ref'd, n.r.e.). There are several interrelated factors which should be considered in determining whether a duty should be imposed, the foremost and dominant factors being foreseeability of the risk. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). A person has no duty to foresee or anticipate that another person will engage in negligent, unlawful, or criminal conduct. *Beadel*, 690 S.W.2d at 73; *DeWinne v. Allen*, 154 Tex. 316, 277 S.W.2d 95, 98 (1955).

Although the Bank may have owed a duty to exercise reasonable care with regard to the assignment and delivery of the trailer titles to Appellants as it received them in 1989, a question we need not decide, even so this would not impose a continuing duty to exercise ordinary care to protect Appellants' lien interests more than three years after the assigned titles had been delivered to them and all banking relationships had ceased to exist. This is especially true considering the fact that the request for the releases of liens and affidavits came not from some stranger but from Rio Grande (through Doug Crutcher), Rio Grande being the title owner of the trailers throughout the Bank's previous relationship with Rio Grande and Appellants. Although there is some summary judgment evidence in the form of the depositional testimony of Mr. Waddell, no longer an employee of the Bank, and of Ms. Aide Vallejo, the Bank's current Loan Operations Officer, to the effect that good banking practices would dictate that an investigation, including a review of the Rio Grande file, should have been made before bowing to Rio Grande's request for execution of the Transportation Department forms, that practice would be for the Bank's benefit and protection, not for the protection of the former customer. Had the

2. See also comment 1 to Section 5.109.

Bank investigated and come across Waddell's letter of January 4, 1989 (there is no evidence whether the Bank did or did not so investigate), this would have only informed the Bank that it had some three years before released its liens and assigned the titles to Appellants. The Bank could not, in February 1989, have foreseen or anticipated that Appellants for some reason would not take appropriate measures to perfect their liens or that Rio Grande and Doug Crutcher, apparently aware that Appellants had not perfected their liens, would attempt some fraudulent or unlawful act. Nor do we perceive the January 4, 1989 letter, if read by the Bank in April 1992 when Doug Crutcher made the request, as putting the Bank on notice that something suspicious was going on. There is no claim or evidence that the Bank was ever aware that Doug Crutcher and Rio Grande were in arrears or in default on the note owed to Appellants.

## CAUSE OF ACTION FOR CONVERSION

Several months after the Bank filed its motion for summary judgment, Appellants amended their petition, alleging in addition to the various breach of duty, negligence causes of action, that the Bank in April 1992 had "assumed dominion and control over [Appellants'] property ... to the exclusion of and/or inconsistent with [Appellants'] rights in and to the subject trailers.... [and thus the Bank] was guilty of conversion...." In response, the Bank filed a supplemental motion for summary judgment, contending that Appellants had failed to state a cause of action for conversion of the certificates of title.

■ The tort of conversion is defined as the unauthorized and wrongful assumption and exercise of dominion and control over the property of another, to the exclusion of and inconsistent with the owner's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex.1971); *Continental Credit Corp. v. Wolfe City Nat'l Bank,* 823 S.W.2d 687, 688 (Tex.App.—Dallas 1991, no writ). On appeal, Appellants claim that the Bank failed to negate the cause of action as it related to Appellants' liens on the trailers. They contend that the evidence shows that the Bank exercised dominion and control over the liens. The Bank argues that under Texas law in order to convert a security interest one must exercise dominion and control over the collateral property. *See Chrysler Credit Corp. v. Malone,* 502 S.W.2d 910, 914 (Tex. Civ.App.—Fort Worth 1973, no writ) (Acquisition of automobile from dealer by one who was not a buyer in the ordinary course of business constituted conversion by buyer of credit corporation's security interest.). *See also White–Sellie's Jewelry Co., Inc. v. Goodyear Tire & Rubber Co.,* 477 S.W.2d 658, 662 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ). (Pawnbroker was guilty of conversion of television sets on which original seller retained security interest when pawnbroker bought them from original purchaser and then resold them.). We agree. Appellants cite us to no authority to the contrary nor do we find any.

■ In our case, not only was Rio Grande the title owner of the trailers, but it had possession of them. All Appellants had in their possession were the assigned titles to the trailers showing the Bank's releases of lien. A lien is not itself property, but is a right to have satisfaction out of property to secure the payment of debt. *Texas Bank & Trust Co. v. Custom Leasing, Inc.,* 402 S.W.2d 926, 930 (Tex.Civ.App.—Amarillo 1966, no writ). Either ownership, possession, or the right of immediate possession of the property in the aggrieved party is a requirement for a conversion action. *City of Wichita Falls v. ITT Commercial Finance Corp.,* 827 S.W.2d 6, 8 (Tex.App.—Fort Worth 1992), *affirmed in part, rev'd in part on other grounds,* 835 S.W.2d 65 (Tex.1992). Wrongfully withholding a title to property from the lawful owner may constitute conversion, *Bures v. First Nat'l Bank, Port Lavaca,* 806 S.W.2d 935, 938 (Tex.App.—Corpus Christi 1991, no writ), but this is not such a case. The Bank was merely complying with the request of the lawful owner of the trailers to re-execute releases of its liens, the Bank having no further claim against the trailers. Somewhat analogous to what Appellants claim the Bank did in this case is the situation where a bank or other creditor wrongfully takes and files a security interest

in some property in another's possession. The mere taking and recording of a security interest in personal property when the party taking the security interest never exercises ownership or control over the property other than the filing of the security interest does not constitute conversion. *Prewitt v. Branham,* 643 S.W.2d 122, 123 (Tex.1982); *Bures,* 806 S.W.2d at 938. Because Appellants had neither possession nor the right to possession of the trailers, but by virtue of their unperfected liens had only a right to obtain satisfaction of the debt owed to them by Rio Grande and Doug Crutcher out of the trailers, we hold that Appellant have no cause of action against the Bank for conversion.

In conclusion, we hold that the Bank owed no duty to Appellants, under the circumstances of this case, to conduct a further investigation or otherwise to protect Appellants' unrecorded liens. Having found no duty as a matter of law, we overrule both of Appellants' points of error.

Judgment of the trial court is affirmed.