**Opinion filed January 13, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00047-CV
_____

## ROY CALLAWAY, Appellant

## V.

## ROBERT LEE STATE BANK, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV46686**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute about the sale of a drilling rig. The case involves a claim that a bank holding a security interest in the drilling rig committed a conversion or conspired with others to defeat the plaintiff's alleged ownership interest in the rig.

Appellant, Roy Callaway, sued multiple parties under conversion and civil conspiracy theories. One of these parties was Robert Lee State Bank (the Bank), the

appellee in this case.  The Bank filed a no-evidence motion for summary judgment (the Motion).  In response to the Motion, Appellant failed to raise a genuine issue of material fact by responding with evidence demonstrating any alleged conversion, by the Bank.   The trial court granted the Motion, and this appeal followed.  Appellant raises fourteen issues on appeal.  In the first and second issues, he alleges that the trial court erred in granting the no-evidence motion for summary judgment with respect to the conversion and civil conspiracy claims.   In the remaining issues, Appellant alleges errors in the exclusion of evidence and globally asserts that those errors were harmful.  We affirm.

*Factual and Procedural History*

### A.  Purchase and Repair of Used Drilling Rig

Appellant had an agreement with Latigo Pipe and Equipment (Latigo), which was owned by Tommy Parr (Tommy), to repair a drilling rig for either future sale or use.  Latigo purchased the drilling rig, and the rig became part of Latigo's pledged collateral on a loan from the Bank.

### B.  Agreed Ownership of Rig

Appellant and Tommy signed an agreement on September 30, 2005, which contained all pertinent details about the purchase and ownership of the drilling rig—along with 3,000 feet of drilling pipe and a mud pump.[1]  Per the agreement, Latigo would own the drilling rig until all investments and expenses for the rig were paid.  Following the payment of all expenses, the listed equipment would belong to Latigo and Appellant as equal partners (50% each).  The equipment was to be stored in Appellant's yard, and Appellant was to make all necessary repairs.  Latigo would hold title to the equipment until such time when all expenses were recouped by both parties.  Appellant and Tommy also agreed that no mechanics liens would be filed.

---

[1]The drilling pipe and mud pump are not at issue in the appeal.

2

Finally, the agreement laid out the terms of how expenses, repairs, and profits would be divided, should Appellant and Tommy, on behalf of Latigo, agree to work the equipment.[2] Tommy's wife, Sharilyn Parr (Sharilyn), served as a witness to this agreement. Tommy, Sharilyn, and Appellant are all listed as being involved in the company known as Wild West Drilling (WWD), a company they formed to work the rig. All three are similarly listed as signatories on the WWD account they opened at the Bank on March 28, 2006.

### C. Negotiation for Purchase of Rig

At some point following the signing of this agreement and the opening of the bank account, Appellant and Tommy began to work the rig. They did so until Tommy's death on June 10, 2006. In the four months following his death, several events occurred. Sharilyn, along with Tommy's son Auston, visited Appellant and discussed the possibility of selling the drilling rig to Appellant. Appellant was interested in purchasing the rig and continuing to use it for work. Sharilyn represented to Appellant that the Bank had given a loan to Latigo and had called the note, making the entire balance due. Part of the agreement was that the Bank would have a lien on equipment that Latigo had in its possession, should the company be unable to repay the loan. Later, Sharilyn told Auston that the Bank had not called the note and that she merely wanted to sell the equipment. The Bank confirmed that, in July 2006, it had not called the note and that the loan term was not set to end until September 2006. The Bank discovered that Sharilyn had misled Appellant and indicated that Appellant made several phone calls to the Bank between July 15 and August 11, 2006, in an effort to stop Sharilyn from selling the drilling rig.

---

[2]In the agreement signed on September 30, 2005, working the equipment is clarified as drilling a well.

*D. Sale of Rig and Payoff of Bank Note*

Appellant was aware that the loan had not been paid off and that Latigo had title to the rig: he offered to pay off the loan in exchange for the rig, and when he attempted to reclaim the rig, it was represented by both Sharilyn and the Midland County Sheriff that the rig had a lien on it. Appellant's attorney sent a letter to the Bank on August 11, 2006, outlining his complaints, and the Bank's attorney responded on August 15, 2006, requesting Appellant's attorney to direct all future communications to him as the Bank's attorney. Following this exchange, Sharilyn sold the drilling rig and other equipment to CrossTex Services, L.L.C. (CrossTex), represented by Mark Burkett (Burkett). Using these funds, and funds transferred from a WWD bank account, Sharilyn paid off the money owed by Latigo to the Bank.

The Bank released the lien it had on Latigo's equipment, including the drilling rig, and there is no evidence that the Bank questioned Sharilyn as to where she received the funds to settle the loan. Sharilyn had no discussion with anyone at the Bank with respect to the source of the funds or any details concerning the sale of the rig.

Appellant brought a civil suit against the Bank, Sharilyn, Latigo, Burkett, and CrossTex.[3] This appeal follows a hearing on October 25, 2019, regarding a no-evidence motion for summary judgment filed by the Bank.[4] The motion was confined to Appellant's claims against the Bank. The pivotal appellate issue around

---

[3]Originally, Appellant also named Rita Pannell and Blue Ridge Resources, Inc. as defendants. Rita Pannell, listed as vice president/secretary of Latigo, is only briefly named as having allegedly helped Sharilyn. Blue Ridge Resources is a company belonging to Burkett, but it was quickly discovered that CrossTex was the company named on the bill of sale and that Blue Ridge Resources does not appear to have played a role in the events that brought about the lawsuit.

[4]At the time of the hearing on the motion for summary judgment, the case had been pending in the trial court for thirteen years.

4

which his other issues revolve is whether a genuine issue of material fact regarding conversion by the Bank was raised by Appellant. Following the order granting the motion in favor of the Bank, Appellant settled with the remaining parties, including Sharilyn.

*Standard of Review*

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). However, a trial court's decision to exclude or admit summary judgment evidence is reviewed for an abuse of discretion. *Id.* at 84–85 (citing *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017)). When the trial court's order does not specify the grounds for its summary judgment, we will affirm it if any of the theories are meritorious. *Knott*, 128 S.W.3d at 216. If an appellant fails to challenge all grounds on which the summary judgment may have been granted, the appellate court must uphold the summary judgment. *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Under the Texas Rules of Civil Procedure, a no-evidence motion for summary judgment is required to "state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). The nonmovant has the entire burden to produce evidence raising a genuine issue of material fact once the movant files a no-evidence motion. TEX. R. CIV. P. 166a(i); *see Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 608 (Tex. 2017) (summary judgment was proper when the nonmovant did not respond to no-evidence motion).

For a no-evidence motion for summary judgment, the standard of review is identical to the standard used in reviewing a directed verdict. *Amwins Specialty Auto, Inc. v. Cabral*, 582 S.W.3d 602, 607 (Tex. App.—Eastland 2019, no pet.)

(citing *Merriam v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750−51 (Tex. 2003). "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc.*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

The burden is on the nonmovant to raise a genuine issue of material fact about the elements challenged in the no-evidence motion for summary judgment. TEX. R. CIV. P. 166a(i); *First United Pentecostal Church v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). A fact is "material" only if it affects the outcome of the suit under the governing law; a material fact issue is "genuine" only if the evidence is such that a reasonable jury could find the fact in favor of the nonmovant. *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 11–12 (Tex. App.—Fort Worth 2002, no pet.). The nonmovant must produce more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *First United Pentecostal Church*, 514 S.W.3d at 220. A nonmovant produces more than a scintilla of evidence when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004). A nonmovant produces no more than a scintilla of evidence when the evidence is "so weak as to do no more than create a mere surmise or suspicion of a fact." *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003) (quoting *King Ranch, Inc.*, 118 S.W.3d at 751). We consider the evidence "in the light most favorable to the non-movant, disregarding all contrary evidence and

6

inferences." *King Ranch, Inc.*, 118 S.W.3d at 751 (citing *Merrell Dow Pharm., Inc.*, 953 S.W.2d at 711).

*Analysis*

We will discuss Appellant's fourteen issues in the broad context of his three primary allegations: conversion, civil conspiracy, and evidentiary challenges.[5]

*A. Evidentiary Challenges*

In Issues 3 through 14, Appellant complains of the trial court's rulings on the Bank's objections to Appellant's summary judgment evidence. We address these issues first because potentially they define the evidence to be considered when ruling on all other Appellant issues. At the outset, we note that an appellate brief "must contain clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Rule 38.1 requires both citation to authority and substantive analysis in regard to an issue, and failure to provide either constitutes a waiver of the issue on appeal. *Alvarez v. State*, 2021 WL 3923250, at *2 (Tex. App.—Eastland Sept. 2, 2021, no pet.) (mem. op., not designated for publication); *see also Castille v. Service Datsun, Inc.*, 2017 WL 3910918, at *13 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem. op.) (finding that appellants waived their jury instruction complaint for failure to provide clear argument or authority in their brief); *Huml v. Mitrisin*, 473 S.W.3d 821, 824 (Tex. App.—El Paso 2015, no pet.) (affirming trial court on grounds that pro se appellant failed to cite legal authority or to provide substantive analysis of the legal

---

[5]In the case under review, Appellant has alleged no facts and presented no summary judgment evidence establishing or tending to establish that any special or confidential relationship existed between Appellant and the Bank. As a general rule, in an ordinary banking relationship, no special or fiduciary relationship has been created. *See, e.g., Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 873 (Tex. App.—El Paso 2021, pet. denied); *Mfrs. Hanover Tr. Co. v. Kingston Inv'rs Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ); *Victoria Bank & Tr. Co. v. Brady*, 779 S.W.2d 893, 902 (Tex. App.—Corpus Christi–Edinburg 1989), *aff'd in part, rev'd in part on other grounds*, 811 S.W.2d 931 (Tex. 1991).

issues presented, resulting in waiver of the complaint); *Washington v. Bank of New York*, 362 S.W.3d 853, 854–55 (Tex. App.—Dallas 2012, no pet.) (finding that pro se appellant waived issue on appeal by inadequately briefing it). Even if we assume that Appellant is correct in his assertion that the trial court erred in excluding the evidentiary items challenged in Appellant's Issues 3 through13, as further discussed below, without evidence of conversion by the Bank, it would not affect our disposition of this appeal.

In our review of Appellant's documents, tendered and excluded by the trial court and complained of in Appellant's Issues 3 through 13, while they may implicate other parties, we observe that they provide no evidence on the linchpin issue of the Bank's alleged conversion.[6]

---

[6]In Appellant's Issues 3 through 7, he complains of exclusion by the trial court of his affidavit. Appellant argues (twice) within his brief that the affidavit "merely explained that a hazy or confusing situation" existed and that Appellant was requesting "that things be worked out" before any sale occurred. This is not evidence of the Bank's involvement in the sale or of the Bank's conversion of property subject to the sale. While Appellant attempts to establish, through the affidavit, some notice to the Bank of Appellant's dispute with Sharilyn, Appellant provides no case law that a duty on the Bank was created thereby, nor does the affidavit create a fact question by providing some evidence of conversion on the part of the Bank.

In Appellant's Issue 8, he complains that the temporary injunction transcript was not admitted. The trial court itself was an integral part of the temporary injunction hearing, and how the transcript provides evidence on the pivotal issue of the Bank's participation in conversion is not briefed, nor was it explained to the trial court to preserve the argument.

In Appellant's Issue 9, he complains that the letter from his attorney to the Bank was not admitted. The letter provides hearsay information and was not offered on any limited basis stated by Appellant. Furthermore, other than some notice to the Bank of Appellant's dispute with Sharilyn, Appellant provides no evidence or case law of any duty on the part of the Bank, nor does the letter provide evidence of the Bank's conversion.

In Appellant's Issue 10, he complains that the original title certificate for the truck on which the rig was mounted was not admitted. This document provides no evidence of the Bank's participation in a conversion.

Appellant inadequately addresses the relevancy, provides no cases in support, and ignores an examination of alleged harms that he claims he suffered by the exclusion of his proffered summary judgment evidence. Importantly, Appellant is also unable to show that the excluded evidence would have established a nexus demonstrating that the Bank was guilty either of conversion, or without same, a civil conspiracy with Sharilyn to convert property. Mere receipt of money in repayment of an arm's length loan transaction is not evidence of an intentional tort like conversion, nor is it evidence of a conspiracy. *See Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex. App.—Dallas 1988, writ denied); *see also Immobiliere*

---

In Appellant's Issue 11, he complains that sixty pages of bank records obtained through discovery were not admitted and that they provide some indication of conversion by Sharilyn of WWD receivables wired to Latigo's account. Appellant provides no case law establishing any duty on the part of the Bank, nor did the records provide evidence of conversion on the part of the Bank.

In Appellant's Issue 12, he complains that his summary of checking account records of WWD was not admitted under Rule 1006 of the Texas Rules of Evidence. The law gives wide discretion to the trial court in determining whether the records were so voluminous as to require a summary and whether the summary was helpful or necessary to the trier of fact in order to expedite a trial. The trial court decided matters of law and fact in this matter. Rule 1006 is a rule of convenience. The trial court within its discretion determines whether the summary was helpful to it and, since the records themselves were available and admitted, we cannot find an abuse of discretion on the part of the trial court in not admitting Appellant's summary. Further Appellant provides no case law in support of his position that the exclusion of the summary under these circumstances was an abuse of discretion.

In Appellant's Issue 13, he complains that the trial court erred in sustaining a motion to strike those records that were not admitted. Records and exhibits not admitted *should* be stricken from review by the trier of fact and from consideration by the trial court in legal determinations. *Pulte Homes of Texas, L.P. v. Texas Tealstone Resale, L.P.*, No. 02-16-00029-CV, 2017 WL 1738023 (Tex. App.—Fort Worth May 4, 2017, no pet.) (per curiam mem. op.). Appellant provides no case law in support of his argument that the trial court should not strike records/exhibits that were not admitted.

In Appellant's Issue 14, he globally complains of harm as a result of the trial court failing to admit those documents listed in Issues 3 through 13. Because we do not find any relevance to the documents tendered, and because they provide no evidence of conversion on the part of the Bank, we find no error by the trial court in excluding same. It is, therefore, unnecessary for this court to proceed into a discussion of and a review of harm resulting from the trial court's rulings thereon.

9

*Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 881–82 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Notwithstanding that Issues 3 through 14 were inadequately briefed, because the excluded documents did not contain evidence of conversion, without which there is no conspiracy—elements on which we uphold the no-evidence summary judgment—this court need not reach the question of whether the trial court abused its discretion in sustaining the Bank's objections to Appellant's proposed evidence.

### B. Conversion – No Evidence of Element of Dominion and Control by Bank

#### 1. Generally

In his second issue on appeal, Appellant contends that the trial court erred in granting summary judgment with respect to Appellant's claim of conversion. The Bank alleged in the Motion that there was no evidence to support the following element of Appellant's conversion claim: that the Bank exercised dominion or control of the drilling rig. The Bank also asserted that, without such proof, no damages could be assessed against the Bank. Importantly, the Bank points out that Appellant made no response to the Bank's no-evidence motion as to the element of damages.[7]

Appellant contends that there were two separate acts of conversion by the Bank in which the Bank exercised dominion or control over Appellant's property: (1) the Bank received funds from the sale of the drilling rig and the truck to which it was mounted, and it applied those funds to the Latigo loan debt on the rig, and (2) the Bank transferred funds from WWD's account to Latigo's account, despite Appellant's claim that he did not authorize such transfers.

---

[7]Although this alone might be sufficient for the trial court to grant the Motion, we proceed with the discussion surrounding the element of dominion and control over personal property.

Regarding Appellant's claim of conversion of the rig, truck, and equipment, conversion occurs when a person or entity makes "an unauthorized, wrongful assumption and exercises dominion and control over the personal property of another to the exclusion of or inconsistent with the owner's rights." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). [8]

### 2. *No conversion in the transfer of funds between accounts*

Concerning Appellant's complaint about a transfer of funds from the WWD account to the Latigo account, summary judgment for the Bank was proper. An allegation for the conversion of money arises only where the money can be "identified as a specific chattel, meaning it is '(1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'" *Lawyers Title Co.*, 424 S.W.3d at 718 (quoting *Entm't Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792, 799 (N.D. Tex. 2010)).

Here, Appellant produced no evidence of a standing directive to the Bank to keep accounts or certain funds in the accounts separated; no evidence that the funds were identified as, for, or from a specific chattel; and no evidence that the money constituted an intact fund. The accounts in question were common business checking and operating type accounts. Regarding funds transferred from a WWD account to a Latigo account, Appellant also failed to present evidence to show that

---

[8]To establish a claim for conversion, the plaintiff must prove:

(1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised [dominion or] control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

*Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App.—Dallas 2014, pet. denied). The plaintiff also has a duty to establish that he was injured by the conversion. *Id.*

the Bank unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's (Appellant's) rights as an owner. According to documents submitted as part of the clerk's record, Sharilyn was a signatory on the bank account for WWD. There is no evidence to indicate that Sharilyn's access to the account had been revoked, nor is there any evidence to support that the Bank refused to allow Appellant access to his property. Under the circumstances, the Bank has taken no action regarding the account monies that could be construed as conversion. *See Eckman*, 757 S.W.2d at 398 (claim of conversion by payment of money that is not an intact fund nor identified as a specific chattel fails as a matter of law).

### 3. *The contested element of dominion and control*

In response to the Bank's no-evidence motion for summary judgment, Appellant failed to produce material evidence of the Bank's "dominion or control" exercised over the drilling rig and equipment, a required element of Appellant's conversion claim. The Bank's motion required that Appellant produce in response, more than a scintilla of evidence that dominion or control was exercised by the Bank. The only "action" by the Bank was taking a security interest in personal property, of which Latigo was at least half owner, and then properly releasing the security interest once the lien was paid off. "We agree . . . that the mere taking and recording of a security interest upon personal property even though from someone who is not the true owner does not constitute conversion, when the party taking the security interest never exercises ownership or control other than the filing of the security interest." *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982). Under the facts of the case before us, the Bank may have taken or recorded a security interest, but no evidence demonstrates an act of exercising ownership or control of the rig.

This is not a matter where material evidence demonstrates that the Bank foreclosed on personal property to satisfy an outstanding loan. In fact, the Bank had never called the loan nor accelerated the debt. Rather, Sharilyn allegedly satisfied a Latigo loan debt incurred for the benefit of the partnership by a transfer of monies from the partnership account and/or the sale of the contested rig and equipment. This transaction occurred in 2006, and summary judgment for the Bank was granted in 2019. In the extended time available for investigation, Appellant developed no material evidence of conversion by the Bank and, in response to the no-evidence motion for summary judgment, tendered no material evidence of acts of conversion of the partnership equipment by the Bank about which Appellant here complains.

### 4. *Acts of conversion by Sharilyn, not the Bank*

With respect to conversion, the petition alleged, and the evidence presented by the parties shows, that Sharilyn was the only actor. Sharilyn withdrew funds from an account on which she was an authorized signatory to transfer them to another authorized account. Sharilyn then paid off the Latigo loan on the rig and associated equipment—allegedly with funds from that account, which required the Bank to release the equipment as loan collateral, having no further claim on it. Sharilyn sold the equipment to an unrelated third party. While Appellant sued Sharilyn, he has since settled with her but has maintained his conversion and conspiracy claims against the Bank. The Bank, however, "had neither possession nor the right to possession [of the rig and equipment], but by virtue of [apparently] unperfected liens had only a right to obtain satisfaction of the debt owed to them." *Crutcher v. Cont'l Nat'l Bank*, 884 S.W.2d 884, 889 (Tex. App.—El Paso 1994, writ denied). Therefore, Appellant has "no cause of action against the Bank for conversion." *Id.*

5. *Appellant's evidence in response to no-evidence motion*

Regarding the sale of the drilling rig, Appellant presents no evidence to show the required element that the Bank unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's (Appellant's) rights as an owner. There is no evidence that the Bank ever had possession of the drilling rig or that the Bank made the sale of the drilling rig to CrossTex. While there is possible evidence that would indicate Sharilyn both exercised control of the rig (by calling the Sheriff's department) and excluded Appellant's rights as an owner (by selling the truck mounted drilling rig),[9] Sharilyn is not the Bank in this case. Further, none of the excluded evidence supports this element of conversion.

a. *Appellant's pleadings contradict dominion and control by the Bank*

The record contains no evidence to support the second element of Appellant's conversion claim: the exercise of dominion and control over property belonging to Appellant. In Appellant's response to the Bank's no-evidence motion for summary judgment, he claims that the Bank acted with Sharilyn to illegally sell the drilling rig which Appellant held title to, that the Bank knew Appellant had title to that property, and that the Bank used the funds from that sale to satisfy Latigo's loan obligations. Appellant indicates that the sale itself is evidence that the Bank exercised dominion or control over the drilling rig. This claim is contrary to the live pleadings of Appellant in his third amended petition (the Petition). *See Eckman*, 757 S.W.2d at 398 (claim not pled in the trial court fails on appeal as a matter of law). In the Petition, Appellant conceded that Sharilyn had authority to withdraw funds from the WWD account at the Bank and that she was meant to withdraw these funds

---

[9]Appellant had title to the truck to which the rig was mounted.

14

to pay Latigo's bank note. There is no evidence to indicate that the Bank was privy to the discussion of repayment, nor is there evidence that Sharilyn's authority to withdraw funds from the WWD account had been revoked at the time that the transaction occurred. In the Petition, Appellant also alleges that Sharilyn, not the Bank, sold and illegally exercised dominion and control of WWD assets (the drilling rig) without authority.

b. *Appellant's exhibits do not support Bank dominion and control*

Appellant points to three exhibits in support of his assertion that the Bank illegally exercised dominion and control over Appellant's property: Appellant's sworn affidavit (Exhibit No. 2), letters between Appellant's and Appellee's attorneys (Exhibit No. 4), and the application for and title to a white, 1974 Road Boss truck (Exhibit No. 8). Appellant points to no specific part of these exhibits to support the claim that the Bank had dominion or control over Appellant's property, nor do any of the exhibits support this assertion.

*Appellant's affidavit* – In his affidavit, Appellant indicated that the Bank had failed to provide bank statements to Appellant (but he did not provide a nexus as to how that alleged fact is the proximate cause of his harm), that Appellant's attorney sent a letter to the Bank, and that Appellant called the Bank and spoke with someone who allegedly told Appellant that "the bank would do whatever it needed to do to recover its monies." Though Appellant states that he told a bank employee, with unknown authority, that Sharilyn had lied to him to get the drilling rig, this would only support an inference that Sharilyn, not the Bank, had control or dominion over the rig. *See Eckman*, 757 S.W.2d at 398 (legal and factual conclusions about acts or omissions of the bank and its agents made in an affidavit were insufficient to raise a fact issue as to a claim of conspiracy).

*Attorney letters* – The first of the letters between attorneys was sent by Appellant's counsel to the Bank on August 11, 2006. The letter includes allegations that Sharilyn had not followed through on promises made to Appellant, but nothing to indicate that the Bank had contributed to or supported Sharilyn's actions. Aside from Appellant's last allegation that the Bank had called the note and had a right to the equipment, there is no evidence that the Bank did in fact have dominion or control over the drilling rig.[10] The Bank's attorney responded on August 15, 2006, to inform Appellant's counsel that all communication regarding these matters should thereafter be directed to him, and he invited further communication.

*The truck title* – Exhibit No. 8, which is the title to the truck, does not demonstrate that the Bank had ever seen this document at the time of the dispute, nor does it show that the Bank exercised control over the rig or the truck on which it was mounted. The documents are solely related to the title for the truck, not the rig itself, and as such do not match any claims that the rig was removed from Appellant's ownership illegally. The legal title to the truck falls short of ownership of the rig and, importantly, does not provide evidence that the Bank exercised any sort of dominion or control over *either* the truck or the drilling rig.

Appellant failed to present any evidence to support his claim that the Bank exercised any control over the drilling rig—illegally or otherwise. Without such evidentiary support, Appellant failed to carry his burden to produce evidence as to the contested element of conversion, without which, summary judgment granted by the trial court was proper. We overrule Appellant's second issue.

---

[10]The attorney letter for Appellant dated August 11, 2006, informs the Bank of Appellant's dispute with Sharilyn, acknowledges a loan from the Bank to be repaid in order for the drilling rig to "be owned free and clear," and concludes that there exists "a very hazy and uncertain situation with respect to the legal status of the drilling rig." The letter merely requests contact with the Bank to "attempt to resolve this matter" without which litigation might follow. It does not claim that the Bank loan has been repaid, purport to direct the Bank in any way or to withdraw any authorization of Sharilyn on any accounts, nor does it purport to prohibit the use of any funds, from any source, to pay off the Latigo loan.

*C. Civil Conspiracy – a Derivative Tort*

In his first issue, Appellant asserts that the trial court erred when it granted the no-evidence motion for summary judgment with respect to Appellant's claim of civil conspiracy against the Bank. The Texas Supreme Court has repeatedly called civil conspiracy a "derivative tort," meaning that it depends on an underlying tort or illegal act. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019). This means that the civil conspiracy is connected to the underlying tort and survives or fails alongside it. *Id.* at 141. It is not the agreement itself that gives rise to the cause of action, but the "injury to the plaintiff resulting from [another] act done pursuant to the common purpose." *Id.* (alteration in original) (quoting *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979)). "Civil conspiracy depends entirely on the injury caused by the underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself." *Id.* In *Massey v. Armco Steel Co.*, the five elements of conspiracy were defined as: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." 652 S.W.2d 932, 934 (Tex. 1983). Both before and after *Massey*, conspiracy decisions emphasized that the damages come from the underlying wrongful act, and it is improper to read these elements to mean that the litigated damages must only be proximately caused by the conspiracy itself. *Agar*, 580 S.W.3d at 141.

There are two reasons why we must uphold the trial court's no-evidence summary judgment as to Appellant's claim that the Bank was part of a civil conspiracy: (1) Appellant's judicial admission and (2) no evidence of an underlying tort. In Appellant's first amended response to the no-evidence motion for summary judgment (the Response), Appellant admitted that the Bank could not have been

engaged in a conspiracy, as the Bank did not have knowledge of the purpose of the conspiracy.[11] In the Response, Appellant focused primarily on the alleged acts taken by Sharilyn, rather than the Bank. Even if this statement were not considered, Appellant failed to present summary judgment evidence that the Bank was, first, guilty of the underlying tort of conversion or that the Bank in any way colluded or shared a course of action with Sharilyn.

None of the evidence that was excluded would have shown that such collusion is applicable here. In large part, Appellant relies on the letter sent from his attorney to the Bank as evidence of the Bank's knowledge of and part in a conspiracy. Appellant's reliance thereon is misplaced. *See First United Pentecostal Church*, 514 S.W.3d at 224 ("But even where a conspiracy is established, [any] wrongful acts by one member of the conspiracy that occurred before [an agreement is made] do not simply carry forward, tack on to the conspiracy, and support liability for each member of the conspiracy as to the prior acts. . . . [T]he actions *agreed to* by the conspirators must cause the damages claimed." (emphasis added) (citation omitted)). Evidence of the Bank's alleged shared object and purpose with Sharilyn must be shown to have existed prior to her affirmative acts in order for the Bank to have conspired with her in those actions. Appellant asserts that the Bank was *on notice* of Sharilyn's bad acts as a result of the letter that was sent from his attorney to the Bank—and that the Bank's lack of action following the letter is a type of consent that subjects the Bank to liability for civil conspiracy.[12] We disagree. The letter was sent in August 2006, and the record shows that in June and July of 2006, Sharilyn removed funds from the WWD account, lied to Appellant about the Bank note being

---

[11]"Robert Lee State Bank did not have knowledge of a Purpose [sic] of conspiracy, therefore it could not have been engaged in a conspiracy."

[12]See footnote 10, *supra*.

called, and informed the sheriff that the drilling rig had a lien on it preventing removal thereof. These events having occurred prior to the notice letter of August 2006, may not then be attributed to the Bank for the purpose of such a conspiracy. Further, there is no evidence to indicate that at any point the Bank knowingly assisted Sharilyn in tortious acts or that there was some sort of conspiratory agreement in place before—or after—the attorney's letter in August 2006. There is nothing in the record evidencing that the Bank contributed to the harm alleged by Appellant. Accordingly, we overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


January 13, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.